109 S.W.3d 772 (2003)
In the Interest of Z.B.P. and J.N.P.
No. 2-02-407-CV.
Court of Appeals of Texas, Fort Worth.
June 5, 2003.
*775 David R. Sweat, Arlington, for Appellant.
Kenneth L. McAlister, Fort Worth, for Appellee.
Panel A: CAYCE, C.J., HOLMAN and GARDNER, JJ.

OPINION
DIXON W. HOLMAN, Judge.
Appellant Fleta Dianne Peterson and Appellee and cross-Appellant William Peterson appeal from the trial court's order modifying the parent-child relationship. Appellee sued Appellant, seeking to modify the provisions of an agreed divorce decree relating to their children, nine-year-old Z.B.P. and eight-year-old J.N.P.[1] After a bench trial, the trial court rendered a modification order that changed the children's primary residence from Appellant to Appellee, greatly reduced Appellant's possession of the children, and ended Appellee's obligation to pay child support.
On appeal, Appellant contends that the trial court abused its discretion in signing the order because the evidence is legally and factually insufficient to support the modification and that the trial court erred in ending Appellee's monthly child support obligations. In his cross-appeal, Appellee contends that the trial court erred in failing to order Appellant to pay child support and in failing to award attorney's fees to him. We affirm.

Factual Background
Appellant and Appellee were divorced in 1996 when Z.B.P. was four years old and J.N.P. was two years old. Appellee, who is an attorney, drew up the agreed divorce decree (the "decree"), which he and Appellant signed. Under the terms of the decree, Appellant and Appellee agreed to act as joint managing conservators of Z.B.P. and J.N.P. and to limit the children's residence to Tarrant County. In addition, Appellee was to pay $1,500 a month in child support and one-hundred percent of the children's uninsured medical expenses.
In 1997, Appellant indicated that she wanted to move to Springtown in Parker County, Texas, on a temporary basis. Although this move violated the terms of the decree, Appellee conceded to the move based on Appellant's agreement that the move would be temporary, that she would not cohabit with another woman, and that the children would not attend Springtown schools. Shortly after moving to Springtown, Appellant acquired a live-in female paramour in violation of her agreement with Appellee. In addition, the move to Springtown became permanent.
Over the years, besides some disagreements over the children's medical care, Appellant and Appellee got along reasonably well in sharing custody and responsibility of the children. Appellee had possession of the children every weekend and on Wednesday nights, and Appellant had possession during the weekdays and the remaining weeknights. When the children reached school age, Appellant drove the children daily to school in Keller, an approximately two-hour, ninety-mile round trip.
Beginning in 1997, when Z.B.P., the older child, started school, an annual dispute between Appellant and Appellee arose regarding *776 the children attending school in Springtown or continuing, as the parties had agreed, in Keller. Appellant wanted the children to attend Springtown schools because she and the children were tired of the long commute and the difficulty it caused in their participation in extracurricular activities. Appellee wanted the children to attend Keller ISD because he thought Keller schools were of a better quality than those in Springtown. These disagreements escalated and cumulated in August 2001 when Appellant wrote a letter to Appellee stating that she was going to unilaterally remove the children from the Keller ISD and enroll them in Springtown. Appellee filed a temporary restraining order so they would continue to be enrolled in Keller ISD.
Appellee filed an original petition seeking to modify the terms of the agreed divorce decree to allow him to establish the children's residence. Appellant filed a counter-petition requesting, among other things, that she remain primary joint managing conservator, that she be granted the right to establish the children's primary residence without domicile restrictions, the right to consent to medical treatment, the right to make decisions concerning their education, and the right to continue to receive support from Appellee.
After the bench trial, the trial court entered findings of fact and conclusions of law in support of its order. Among other things, the trial court found that: 1) the circumstances of Z.B.P., J.N.P., Appellant, and Appellee had changed since the entry of the agreed divorce decree due to the children's attaining school age, both parents moving to new residences, and remarrying; 2) the children endure a daily two-hour commute to their Keller ISD school; 3) the children's current residence and school arrangement precludes some peer relationships with their fellow students; 4) Appellant complains to the children on a repeated basis regarding the commute to school; 5) the living arrangement of the children in Parker County interferes with Appellant's and Appellee's ability to attend the children's school and extracurricular functions; 6) Appellee has a stable, traditional, family household environment, while Appellant has a non-traditional, tumultuous household; 7) the children's residence in Appellee's household will eliminate or minimize the children's commute to school; 8) Appellant had incurred numerous unnecessary medical treatments for the children; 9) Appellant's move to Springtown was in violation of the agreed divorce decree; 10) the residence restriction in the divorce decree to Tarrant County is in the best interest of the children; and 11) Appellee has incurred $11,400 in attorney's fees for the prosecution of the modification proceeding.
Also, based on the evidence before it, the trial court concluded that: 1) the circumstances of Z.B.P., J.N.P., Appellant, and Appellee had changed since the date of the agreed divorce decree; 2) Appellee should be named the joint managing conservator with the rights to establish the residence of the children in Tarrant County and to make decisions concerning their medical care and education; 3) the Tarrant County residence restriction is in the best interests of the children; and 4) Appellant should pay no child support, but should provide support for them while they are in her possession and should pay for one-half of their uninsured medical expenses. The trial court further found that neither party would recover attorney's fees.

The Findings of Fact
In her first issue, Appellant claims that the evidence is legally and factually insufficient to support the trial court's findings. We review a trial court's *777 findings for factual sufficiency by the same standards used in reviewing jury answers. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.1994). We consider all the evidence and set aside the findings only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986).
In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.2001); Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. Cazarez, 937 S.W.2d at 450; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex.2002).
An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).
After our review of the record, we hold that the evidence is both legally and factually sufficient to support the trial court's findings. We cannot say the findings are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Cain, 709 S.W.2d at 176. We overrule Appellant's first issue.

The Modification Order
In her second through fourth issues, Appellant argues that the trial court abused its discretion in naming Appellee as the joint managing conservator with the right to establish the residence of the children.[2] We disagree.

Standard of Review
We review the trial court's modification of managing conservatorship under an abuse of discretion standard. In re T.D.C., 91 S.W.3d 865, 872 (Tex.App.-Fort Worth 2002, pet. denied); In re R.D.Y., 51 S.W.3d 314, 317 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); see Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982) (applying the same standard of review in original determination of conservatorship). A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).
In this case, we have been called upon to determine whether the trial court abused *778 its discretion in appointing Appellee as the joint managing conservator with the rights to establish the residence of the children and to make decisions concerning their medical care and education. A trial court may modify an order that establishes conservatorship of or possession of and access to a child if modification would be in the best interest of the child and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order." Tex. Fam. Code Ann. § 156.101 (Vernon 2002); In re V.L.K., 24 S.W.3d 338, 342 (Tex. 2000).

Best Interests
A court's primary consideration in any conservatorship case "shall always be the best interest of the child." Tex. Fam. Code Ann. § 153.002; V.L.K., 24 S.W.3d at 342. Courts may use the nonexhaustive list of Holley factors to determine the child's best interest. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976); T.D.C., 91 S.W.3d at 872; see also In re Doe 2, 19 S.W.3d 278, 300 n. 20 (Tex.2000) (recognizing that intermediate courts employ the Holley factors to ascertain best interest in conservatorship cases). Those factors include, but are not limited to:
(1) the desires of the child;
(2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future;
(4) the parental abilities of the individuals seeking custody;
(5) the programs available to assist these individuals to promote the best interest of the child;
(6) the plans for the child by these individuals or by the agency seeking custody;
(7) the stability of the home or proposed placement;
(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(9) any excuse for the acts or omissions of the parent.
Holley, 544 S.W.2d at 371-72.
At trial, evidence was presented that Appellant often complained to the children about the two-hour commute to and from school. She would tell them that she was afraid she would fall asleep and have an accident, and the children were afraid that "Mamma will fall asleep and she's going to die." Testimony also exists that the children were having difficult times making and sustaining peer relationships and participating in extracurricular activities because of their residence circumstances, circumstances that Appellant had created in violation of the decree.
In addition, a psychological evaluation of all the parties, conducted by Harry P. Baker, Ph.D., was entered into evidence. Dr. Baker's report reflected that Appellant's fears, anxieties, and concerns were being "projected onto the children." Dr. Baker also noted the children had a fear of Appellee's alcohol use and noted that they "strongly desire to remain in Springtown with their mother and to attend school" there. The doctor reported that he "would lean in favor of the court's granting their request."
A social study conducted by an authorized caseworker, Brad Carpenter, also was entered into evidence. Carpenter concluded that the children should remain in the Keller ISD. Carpenter concluded that Appellant often discussed with the children her fears of having an accident while driving them to school, which had led to a role reversal, giving the children the need to protect their mother. This role *779 reversal also impacted the children's desires to live in Springtown. Carpenter observed that the circumstances requiring the commute were solely created by Appellant.
Evidence was also presented that Appellee had remarried and was living with his wife and two step-children in a traditional family environment. In contrast, Appellant was living with her female paramour and her paramour's son in a non-traditional family setting.
The children expressed their desires to go to school in Springtown. Evidence was also presented that Appellee would provide an environment where the children would know their role as a child rather than as an adult decision maker. Appellant repeatedly emphasized through the trial that she wanted to honor the children's desires concerning where they live and where they go to school, decisions the case worker reported "are decisions best made by adults, not children who have been placed in a role-reversal/care-taking position."
After our review of the record, we cannot say that the trial court's finding that the appointment of Appellee as Z.B.P. and J.N.P.'s joint managing conservator with the rights to establish the residence of the children and to make decisions concerning their medical care and education is not in the children's best interests. The evidence shows that Appellee will provide the children with a traditional home where the children will be encouraged to continue through high school and go to college, and where they will know their roles as children rather than as adult decision makers. The evidence also shows that living with Appellee will minimize the children's stressful daily commute to and from school, and will facilitate the fostering of peer relationships. The trial court clearly could have found that naming Appellee as the joint managing conservator with the right to determine their residence, health care, and education was in the children's best interests.

Material and Substantial Change
We further conclude that the trial court did not err in finding a material and substantial change. A court's determination as to whether a material change of circumstances has occurred is not guided by rigid rules and is fact-specific. See L.P.W. v. S.O., 669 S.W.2d 182, 184-85 (Tex.App.-Fort Worth 1984, no writ).
Appellee agreed in a January 10, 1997 letter to allow the children to make a "temporary" move to Springtown with Appellant. In his letter, Appellee agreed to the move based on the assurance that the move would be temporary and that no women would live with Appellant. A few months after moving to Springtown, in violation of her agreement with Appellee, Appellant acquired a live-in female paramour. In addition, the move became permanent. In 2001, Appellant decided to unilaterally enroll the children in Springtown schools, in further violation of the decree and her agreement with Appellee.
A voluntary arrangement between the parties is a matter which a court should take into consideration in deciding whether an existing order should be changed. Trader v. Dear, 565 S.W.2d 233, 237 (Tex.1978) (orig.proceeding). When, as in this case, parents have made an agreement after a court order, but then have again fallen into disagreement, the court of continuing jurisdiction must become the final arbiter about the managing conservatorship. Id. Appellant and Appellee agreed upon a temporary move to Springtown, that Appellant would not cohabit with another female, and that Z.B.P. and J.N.P. would attend school in Keller. Appellant broke all of these agreements. *780 Appellant's permanent move of the children in violation of the decree and her agreement with Appellant is enough to support a finding of changed conditions. See Bartlett v. Bartlett, 293 S.W.2d 508, 513 (Tex.Civ.App.-Amarillo 1956, writ ref'd n.r.e.) (holding that where the father had remarried and moved to another state since the divorce decree, his taking the child out of the state when he had custody of her, contrary to agreement of the parties, was sufficient to show change in conditions since former award of divided custody, and the trial court did not abuse its discretion in awarding full control and custody of the child to her mother).
In addition to Appellant's violation of the decree and her agreement with Appellee, the evidence showed many other changes in the circumstances of the parties. After the divorce, Appellee moved, remarried, and now lives with his wife and her two children. Since the divorce, Appellant has moved, and J.N.P. and Z.B.P. have grown from toddlers to school-aged children. See In re Davis, 30 S.W.3d 609, 614-15 (Tex. App.-Texarkana 2000, no pet.) ("[T]he change in a child from a babe in arms or toddler to a school-aged child in itself is sufficient to show the material change necessary to support modification.") (citing Horne v. Harwell, 533 S.W.2d 450, 452 (Tex.Civ.App.-Austin 1976, writ ref'd n.r.e.)). In addition, it was Appellant's sole decision to violate the decree and live in Springtown, a decision that subjected her and the children to a two-hour daily commute.
We hold that the trial court did not abuse its discretion in finding that the parties' circumstances had changed. Accordingly, we overrule Appellant's second through fourth issues.

Support
Appellant and Appellee both appeal the trial court's order which ordered that Appellant should not make any child support payments to Appellee and eliminated Appellee's child support payments to Appellant. In his first amended petition, Appellee requested "that the Court make proper orders for the support of the children," and that the trial court order Appellant to pay one-half of the children's uninsured medical expenses. In her counter-petition, Appellant requested that the court grant her "the right to receive and give receipt for periodic payments for the support of the children."
In its order, the trial court found good cause to deviate from the family code's child support guidelines. The trial court ordered that all prior orders of the court regarding child support were terminated as of July 24, 2002, and that no child support was payable at the present time. The trial court made a conclusion of law that Appellant should pay one-half of the children's uninsured medical expenses and provide support when the children were in her possession. In addition, the trial court made a finding of fact that Appellant's "net resources are based on minimum wage, as she is voluntarily unemployed," and that Appellee's monthly net resources are $11,534.98.
The family code allows a trial court to modify a child support order upon the showing that the circumstances of the child or a person affected by the order have materially and substantially changed since the order was signed. Tex. Fam. Code Ann. § 156.401(a)(1); Swate v. Crook, 991 S.W.2d 450, 452 (Tex.App.-Houston [1st Dist.] 1999, pet. denied), abrogated on other grounds by Smith v. Brown, 51 S.W.3d 376, 381 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). In a modification proceeding, the trial court compares the financial circumstances of the child and the affected parties at the time the support *781 order was entered with their circumstances at the time the modification is sought. Holley v. Holley, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied). The movant has the burden to show a material and substantial change by a preponderance of the evidence. Id.
The trial court is accorded broad discretion in setting and modifying child support payments and, absent a clear abuse of discretion, the trial court's order will not be disturbed on appeal. In re P.J.H., 25 S.W.3d 402, 405 (Tex.App.-Fort Worth 2000, no pet.); see also DuBois v. DuBois, 956 S.W.2d 607, 610 (Tex.App.-Tyler 1997, no pet.); Stocker v. Magera, 807 S.W.2d 753, 754 (Tex.App.-Texarkana 1990, writ denied). The test for abuse of discretion is whether the court acted arbitrarily or unreasonably, that is, without reference to guiding rules and principles. Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied). In making this determination we must view the evidence in the light most favorable to the trial court's actions and indulge in every legal presumption in favor of the judgment. Id. If there is some probative and substantive evidence to support the judgment, the trial court did not abuse its discretion. Id.
As a sub-issue to her fourth issue, Appellant contends that the trial court abused its discretion in eliminating Appellee's child support payments to her. She argues that Appellee did not meet his burden of showing that a material and substantial change in financial circumstances has occurred since the entry of the divorce decree and that the elimination of his child support payments is not in the best interests of the children.
Appellant argues that Appellee had the burden of proving a change in financial circumstances, which means he was required to present evidence of the parties' financial condition at the time of the 1996 order and evidence of the parties' financial conditions at the time of the hearing. See Swate, 991 S.W.2d at 453. She argues that no evidence was presented showing the financial circumstances of the parties at the time of the divorce. Without this evidence, the trial court could not conclude whether there was a material and substantial change in Appellee's circumstances. Id. Appellant argues that the only evidence as to her financial condition was testimony that at the time of the divorce she was unemployed and raising the two children, and that the only evidence as to Appellee's financial condition was that he made child support payments of $1,500 per month, which impliedly indicated that he earned $6,000 per month under the appropriate child support guidelines. See Tex. Fam.Code Ann. § 154.125. The trial court found that Appellee's net resources at the time of the modification hearing are $11,534.98 per month, which is evidence that Appellee's monthly net resources have substantially increased. Appellant's resources, on the other hand, have not increased, as she still remains voluntarily unemployed. Appellant also argues that, because of the change in possession of the children, the children's financial circumstances also have not changed. While Appellee's weekday expenses may increase, his weekend expenses will decrease. Likewise, while Appellant's weekday expenses will decrease, her weekend expenses will increase.
We are not persuaded by Appellant's arguments. A parent's duty to support encompasses both financial aid and services rendered to the children. Labowitz v. Labowitz, 542 S.W.2d 922, 925 (Tex. Civ.App.-Dallas 1976, no writ); see also Friedman v. Friedman, 521 S.W.2d 111, 115 (Tex.Civ.App.-Houston [14th Dist.] 1975, no writ). Because the children no *782 longer live with Appellant during the week, she is no longer furnishing the degree of services to the children that she did at the time of the divorce; Appellee, on the other hand, is furnishing more services to the children than he did at the time of the divorce. This, in and of itself, constitutes a material and substantial change requiring the reallocation of financial obligations. See Labowitz, 542 S.W.2d at 925 (ordering the mother to pay child support when the children went to live with their father so the mother could pursue a career because the mother was no longer furnishing the degree of services to the children that she did at the time of the divorce). We hold that the trial court did not abuse its discretion in eliminating Appellee's child support payments, and we overrule the remainder of Appellant's fourth issue.
We next examine Appellee's first related cross-issue in which he contends that the trial court abused its discretion in not ordering Appellant to pay child support.[3] Appellee's main contentions are the trial court erred in concluding that good cause exists to deviate from the family code's child support guidelines and that its conclusion that Appellant should not pay child support is against the policy of the State of Texas. See Bailey v. Bailey, 987 S.W.2d 206, 208 (Tex.App.-Amarillo 1999, no pet.).
A trial court should order child support for the benefit of a child without regard to the obligor's gender. Tex. Fam.Code Ann. § 154.010(1). Appellee argues that if the circumstances were reversed, and he was the joint managing conservator who was voluntarily unemployed, a trial court would not allow him to get away with making no child support payments to Appellant. The appointment of joint managing conservators does not impair or limit the authority of the court to order a joint managing conservator to pay child support to another joint managing conservator. Id. § 153.138.
We agree with Appellee that both parents must shoulder the task of providing support for their children. See Bailey, 987 S.W.2d at 208; R.W. v. Tex. Dep't of Protective & Reg. Servs., 944 S.W.2d 437, 440 n. 4 (Tex.App.-Houston [14th Dist.] 1997, no writ). The parents' responsibility to the child remains joint even though they divorce. Bailey, 987 S.W.2d at 208.
In making a determination of whether applying the family code guidelines would be unjust or inappropriate under the circumstances, the trial court shall consider evidence of all relevant factors. Tex. Fam.Code Ann. § 154.123(b). When making such a determination, the trial court must consider factors such as the ability of the parents to contribute to the support of the child; the amount of time of possession of and access to a child; whether the obligor or obligee has an automobile, housing, or other benefits furnished by another person; the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed; provision for health care insurance and payment of uninsured medical expenses; and any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents. Id. These factors, however, are not exclusive, and a trial court may consider any other factor it deems relevant in *783 determining the amount of child support. Sanchez v. Sanchez, 915 S.W.2d 99, 102 (Tex.App.-San Antonio 1996, no writ). We cannot substitute our judgment for that of the trial court, even though we may have ruled otherwise. Brito v. Brito, 346 S.W.2d 133, 134 (Tex.Civ.App.-El Paso 1961, writ ref'd n.r.e.).
Appellee argues that Appellant is voluntarily unemployed. The duty to support is not limited to a parent's ability to pay from current earnings, but extends to his or her financial ability to pay from any and all sources that might be available. P.J.H., 25 S.W.3d at 406; Pharo v. Trice, 711 S.W.2d 282, 284 (Tex. App.-Dallas 1986, no writ). Thus, a court may take a parent's earning potential into account when determining the amount of child support the parent must pay. Tex. Fam.Code Ann. § 154.066; Pharo, 711 S.W.2d at 284. A parent who is qualified to obtain gainful employment cannot evade his or her support obligation by voluntarily remaining unemployed. Eggemeyer v. Eggemeyer, 535 S.W.2d 425, 427-28 (Tex.Civ.App.-Austin 1976), aff'd, 554 S.W.2d 137 (Tex.1977); see Pharo, 711 S.W.2d at 284 (mother was ordered to pay child support even though she was not employed; she had worked as an airline stewardess; currently she was spending her time researching genealogy, playing tennis, helping friends put together a cookbook, and volunteering for the Dallas County Medical Auxiliary). However, for a court to find that a parent is intentionally underemployed or unemployed under section 154.066, there must be evidence the parent reduced his income for the purpose of decreasing his child support payments. P.J.H., 25 S.W.3d at 405-06; see DuBois, 956 S.W.2d at 610. The requisite intent or lack thereof, however, may be inferred from such circumstances as the parent's education, economic adversities and business reversals, business background, and earning potential. P.J.H., 25 S.W.3d at 406.
As mentioned above, the trial court has the discretion to consider Appellant's earning potential in determining how much child support she was to pay. See Tex. Fam.Code Ann. § 154.066. In addition, when we consider the P.J.H. requisites to applying 154.066, the record does not contain any evidence that Appellant was voluntarily unemployed in order to avoid child support payments. Appellant is a high school dropout who earned a GED, and can only expect to earn minimum wage. She testified that she does not work because, based on her paramour's income, she "[does not] have to," and that she would rather stay home and take care of the children. The evidence showed that part of the reason for her unemployment was that she took care of her elderly and sickly parents who lived next door.
We point out that the trial court did not allow Appellant to get away with not providing any support to the children. The trial court ordered Appellant to provide support to the children when they are in her care on the weekends and to pay one-half of the children's uninsured medical expenses. In light of Appellant's minimum wage earning potential and her reasons for not working, we hold that the trial court did not abuse its discretion in not ordering Appellant to make monthly child support payments. We overrule Appellee's first cross-issue.

Attorney's Fees
In his second cross-issue, Appellee contends that, as the prevailing party, the trial court erred in not awarding him attorney's fees. Under section 106.002 of the family code, "the court may order reasonable attorney's fees as costs and order the fees to be paid directly to an *784 attorney." Tex. Fam.Code Ann. § 106.002(a) (emphasis added). The language of this statute is permissive throughout its terms. It authorizes an award of attorney's fees and it permits the taxing of the award as costs, but it neither requires that the trial court award attorney's fees nor that they be taxed as costs. See Drexel v. McCutcheon, 604 S.W.2d 430, 433 (Tex.Civ.App.-Waco 1980, no writ). We overrule Appellee's second cross-issue.
Having overruled all of Appellant's issues and Appellee's cross-issues, we affirm the trial court's judgment.
NOTES
[1] At the time Appellee brought the modification suit these were the children's ages.
[2] Appellant phrases her points as challenging the legal and factual sufficiency of the evidence. However, legal and factual sufficiency are not independent grounds for review in modification cases, but are only relevant factors in assessing whether the lower court abused its discretion. See McCain v. McCain, 980 S.W.2d 800, 801 n. 1 (Tex.App.-Fort Worth 1998, no pet.); D.R. v. J.A.R., 894 S.W.2d 91, 95 (Tex.App.-Fort Worth 1995, writ denied) (op. on reh'g).
[3] Appellee phrases his point as also challenging the legal and factual sufficiency of the evidence. However, legal and factual sufficiency are not independent grounds for review, but are only a relevant factor in assessing whether the lower court abused its discretion. See McCain, 980 S.W.2d at 801 n. 1; D.R., 894 S.W.2d at 95.