TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00062-CV






Robert Dean Hoffman, II, Appellant


v.


Kathleen Mary Hoffman, Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY

NO. 99-113-FC1, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 This appeal concerns a motion to modify in a suit affecting the parent-child
relationship between Robert Dean Hoffman, II and Kathleen Marie Hoffman. The parties agreed in
their divorce decree that Kathleen, as the custodial joint managing conservator for their two children,
would have the right to establish the primary residence for the children in Williamson County, Travis
County, or a contiguous county until July 1, 2002. When Kathleen prepared to move to
Pennsylvania after that date, Robert filed a motion to modify and argued that the circumstances of
the children, a conservator, or other party had materially and substantially changed and warranted
a modification of the conservatorship agreement. The trial court denied his motion and filed findings
of fact and conclusions of law. On appeal, Robert argues in one issue that the trial court erred in not
finding a material and substantial change in circumstances and that the move is not in the best
interest of the children. (1) We affirm the trial court's judgment. 


BACKGROUND Robert and Kathleen met and married in Pennsylvania and subsequently moved to
Texas. They had two children--Robert Dean Hoffman, III (Bobby) and Kathryn Paige Hoffman
(Katie), who are twins. (2) The families of both Robert and Kathleen still live in Pennsylvania. Robert
and Kathleen were divorced in Williamson County on August 23, 1999. In the divorce decree, the
parties defined their custody and visitation rights and were granted joint managing conservatorship
of the children, with Kathleen having the exclusive right to determine the children's primary
residence. The decree also restricted Kathleen's rights by declaring that


the primary residence of the children shall be within Williamson County, Texas,
or contiguous counties, and the parties shall not remove the children from within
Williamson County, Texas, or Travis County, Texas, or contiguous counties for
the purpose of changing the primary residence of the children until the earliest
occurrence of one of the following specified events: (1) written agreement signed
by the parties and filed with the Court; (2) July 1, 2002; or (3) the date the
Petitioner, Robert Dean Hoffman, II moves from Williamson County, Travis
County, or contiguous counties.



The divorce decree also reflects the agreement of the parties to a separate set of visitation rights for
Robert should the parties reside more than 100 miles apart from each other. 

 Sometime in December 2001 or January 2002 Kathleen notified Robert of her plans
to fulfill her long-stated intention of returning to Pennsylvania with the children to live with her
mother. On January 29, 2002, Robert filed a petition to modify the parent-child relationship in
which he sought to change the primary residence restriction by extending the time-restriction in the
original order to enforce the geographic restriction on the children's residence until they reach age
eighteen or graduate from high school. On April 25, Robert amended his petition to have the trial
court grant him the right to determine the primary residence of the children and, in the alternative,
to change the primary residence restriction. 

 On May 3, the court appointed a psychologist, June Shepherd, to determine if a move
to Pennsylvania would be traumatic to the children. In her report, Shepherd stated that the children
are emotionally close to both parents and upset at the prospect of a move out-of-state. However, she
also found that the move would not be traumatic for the children. She found both Kathleen and
Robert to be excellent parents. (3) Finally, she noted some concerns regarding Bobby's IQ and speech
difficulties. As a result, she recommended that Bobby receive speech and psychoeducational
evaluations.

 At the hearing on the motion to modify on August 16, 2002, the court heard evidence
concerning the circumstances of the children. In addition to admitting Shepherd's report into
evidence, the court heard testimony of: both parties; Michelle Blakesley, the assistant principal at
the children's school; and Bobby's third-grade teacher, Nancy Larson, among others. Blakesley
testified that she reviewed Bobby's school performance in order to determine if he needed special
services from the school. She testified that she had consulted with a building referral committee,
which makes the decisions as to whether a child needs special services. She testified that Bobby was
performing at grade level, and that the committee had considered any speech problems that had been
noticed or reported and ultimately concluded that Bobby was not in need of further special services
from the school. Larson testified that Bobby makes good grades, in the A to B range, and that she
had noticed small speech problems, but that the kind of speech problems he exhibited were not
uncommon in the third grade and were not interfering with Bobby's academic progress. 

 Kathleen testified about the circumstances of her move to Pennsylvania. She plans
to move in with her mother, who will be able to help her in raising the children. Kathleen will
contribute money for household expenses but will not pay rent. (4) She has also made plans for the
children's education after the move and has met with the principal of the school the children are to
attend. She offered evidence that the quality of the school system where she plans to move is
comparable to the quality of the school system in which the children are currently enrolled. She also
has evaluated the opportunities the children will have to be involved in activities similar to those
they enjoy in Texas. 

 Since the divorce, Kathleen has provided the day-to-day care for the children. She
has not worked. Rather, she has lived on money she received in the divorce settlement, agreed-upon
spousal support, and child-support payments. (5) During this time, she has also been studying to
receive a college degree. The evidence indicates that she has made arrangements to continue her
studies after her move. She believes her employment opportunities will be better in Pennsylvania,
she will be better able to finish her education because her mother will help with childcare, and she
will have a wider support network in Pennsylvania. 

 Finally, Kathleen testified that the children will be able to maintain regular
communication with their father through email and telephone calls, in addition to regularly scheduled
visitation. She identified available airline flights between Austin and Pittsburgh, which is about an
hour from her proposed residence. 

 Robert testified that the children's move to Pennsylvania will reduce their time with
him from 153 days to fifty-three days out of the year. In addition, the children's travel time would
involve six hours of flight time per trip, plus at least two hours spent on traveling to and from
airports. He also stressed the activities in Texas that the children enjoy, the friends and other
personal relationships they have in Texas, and the importance of the personal relationship he has
with the children, which is built on the opportunity to eat regular meals with them, to attend school
events, and to hike and camp with them. Robert also offered the testimony of two friends who spoke
to the depth of his relationship with the children. Finally, Robert admitted that he agreed to the
original three-year geographic restriction with the knowledge that Kathleen intended to move to
Pennsylvania at some point after its expiration. He said that he agreed to the three-year restriction
with the intention of re-litigating the conservatorship agreement when such a move might actually
occur.

 Both parents testified extensively about the poor level of communication that exists
between them. They spoke of difficulties arranging and modifying visitations, scheduling activities,
communicating with teachers and school officials, and updating each other as to the health and well-being of their children. This testimony is supported by the findings in Shepherd's report, which also
noted that the children have been adversely affected by their parents' inability to communicate with
each other. 

 On November 7, the court denied Robert's motion and modified the divorce decree
to reflect the standard visitation guidelines for situations of distances of over 100 miles. At Robert's
request, the court made findings of fact and conclusions of law. Among these findings of fact, the
court determined:



 The move to Pennsylvania would be in the best interest of the children.

 It will not be traumatic to the children to move to Pennsylvania.

 It is in the best interest of the children to move to Pennsylvania with their
mother.

 There has not been a substantial and material change in circumstances since the
entry of the previous order.

 The custodial parent supplies the child [sic] with basic quality of life.

 Both educational and professional opportunities for the custodial parent as well
as cost of living will be improved by the move to Pennsylvania.

 It would not be in the children's best interest to impose a restriction on the right
to establish primary residence.

 It will be feasible to maintain the relationship between the non-custodial parent
and the children through suitable visitation arrangements.

 There are available and safe travel arrangements that can be made to facilitate
visitation in Pennsylvania.

 Good cause exists for Respondent [Kathleen Hoffman] to wish to relocate to
Pennsylvania.

 The move will not negatively impact the quality of the children's future contact
with the non-custodial parent.

 The relocation will not deprive the non-custodial parent of regular and
meaningful contact with the children.

 The children would benefit from their mother's increased educational and
employment opportunities in Pennsylvania.

 Both Petitioner and Respondent have extensive family, personal, and cultural
ties to the State of Pennsylvania. 

 The custodial parent and the children's lives will be enhanced by the
educational, economic and professional benefits of the move.




 Robert filed a motion for new trial, which the trial court denied. This appeal
followed.


DISCUSSION

 Robert attacks the trial court's findings in one issue--that the evidence is legally and
factually insufficient to support the trial court's finding that no material or substantial change in
circumstances affecting a party or a child existed and that the findings are against the best interests
of the children. See Tex. Fam. Code Ann. § 156.101(1) (West 2002). We disagree.

 Robert makes two arguments based on his view that a material and substantial change
has occurred. First, he asserts that the distance between Pennsylvania and Texas, the change in the
nature and quality of the children's contacts with him, a change in his ability to maintain regular and
meaningful access to his children, and the wishes of the children to maintain contact with him render
the circumstances materially and substantially changed. Evidence of these changes, he argues,
should have compelled the court to grant him the right to determine the children's residency. 
Second, he believes that Kathleen's move is itself a material and substantial change in their situation,
and thus should have compelled the trial court to re-impose a geographic restriction until the children
are eighteen. 

 To review the evidence under a legal sufficiency or "no-evidence" point, we consider
all the evidence in the light most favorable to the prevailing party, indulging every reasonable
inference in that party's favor. Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276,
285-86 (Tex. 1998); Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than a
scintilla of evidence supports it. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1995); Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re King's Estate,
244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding amounts to more than a
scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. 
Crye, 907 S.W.2d at 499; Moriel, 879 S.W.2d at 25.

 In an appeal from a bench trial, findings of fact are the equivalent of jury answers to
special issues. Echols v. Olivarez, 85 S.W.3d 475, 477 (Tex. App.--Austin 2002, no pet.); Lindsey
v. Lindsey, 965 S.W.2d 589, 591 (Tex. App.--El Paso 1998, no pet.). A factual sufficiency issue
requires the reviewing court to consider and weigh all the evidence and to set aside the judgment
only if the evidence is so weak or so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. In re King's Estate, 244 S.W.2d at 660. We will not substitute our
judgment for that of the trier of fact merely because we reach a different conclusion. Westech Eng'g,
Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). 

 The question of conservatorship of a child is addressed to the sound discretion of the
trial court when it sits as trier of fact. Jeffers v. Wallace, 615 S.W.2d 252, 253 (Tex. Civ.
App.--Dallas 1981, no writ). The trial court is in the best position to observe the demeanor and
personalities of the witnesses and to discern factors not obvious by merely reading the record. Id. 
In determining issues of conservatorship and possession of a child, the primary consideration of the
court is the best interest of the child. See Tex. Fam. Code Ann. § 153.002 (West 2002). However,
Texas has no bright-line test to determine what is the best interest of the children. Lenz v. Lenz, 79
S.W.3d 10, 19 (Tex. 2002). Rather, each case must be decided on its unique set of facts. See id. 
We review a trial court's decision in a case concerning a modification of conservatorship under an
abuse of discretion standard. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Coleman v.
Coleman, 109 S.W.3d 108, 110 (Tex. App.--Austin 2003, no pet.). A trial court abuses its
discretion if it acts arbitrarily or without reference to guiding principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); Coleman, 109 S.W.3d at 110. We may not
reverse for abuse of discretion merely because we disagree with a decision of the district court. 
Downer, 701 S.W.2d at 242. Finally, a court's determination of whether a material and substantial
change has occurred is not guided by rigid rules and is fact-specific. See In the Interest of Z.B.P.,
109 S.W.3d 772, 779 (Tex. App.--Fort Worth 2003, no pet.). 

 This standard of review has been distilled into a two-pronged inquiry: (1) whether
the trial court had sufficient information upon which to exercise its discretion; and (2) whether the
trial court erred in its application of discretion. See Echols, 85 S.W.3d at 477-78; Lindsey, 965
S.W.2d at 592. According to this inquiry, the traditional sufficiency review comes into play with
regard to the first question. Echols, 85 S.W.3d at 478. An appellate court then proceeds to
determine whether, based on the elicited evidence, the trial court made a reasonable decision. Id. 

 We first consider Robert's argument that the trial court erred by finding no material
or substantial change in circumstances warranting a modification regarding which parent should have
the right to determine the residency of the children. Robert points the court to evidence that he
characterizes as showing: Kathleen's "spendthrift ways, her unwillingness to work, her inflexibility
with visitation, her intentional lack of resources, her disregard for the court psychologist's
recommendation" that Bobby receive speech therapy and a psychoeducational evaluation, and the
trauma that her communication problems with Robert cause the children. However, evidence also
exists in the record that much of the divorce settlement sharply decreased in value soon after the
divorce, that she has attended classes in order to earn a college degree, and that she has complied
with visitation orders. In addition, Kathleen offered evidence that Bobby has not received extensive
psychoeducational treatment because the professional judgments of his teacher and assistant
principal, who work with Bobby every day at school, indicated that such treatment was not
necessary. She also offered evidence that Bobby was performing at or above grade level in school. 
We note further that the record contains evidence that the communication problems between the
parties implicate both parties rather than just Kathleen. We cannot find this evidence to be without
weight. Finally, the trial court's findings of facts indicate that the court considered all of this
evidence when it made its decision. That the court did not agree with Robert does not mean that the
court ignored the evidence in the record. Accordingly, we conclude that the court had sufficient
evidence on which to exercise its discretion and did not err in its application of that discretion.

 Next, Robert argues that Kathleen's move to Pennsylvania is itself a material and
substantial change and thus warrants a change to the conservatorship order to renew the geographic
limitation on the children's residence. When Robert and Kathleen divorced, their agreed order
clearly contemplated a geographic restriction for only three years. Even though both parties knew
at that time that Kathleen desired to return to Pennsylvania, Robert is now seeking to modify that
agreement and order. As a result, we must consider the question of whether the evidence is legally
and factually sufficient to show that circumstances changed in a material and substantial way when
Kathleen decided to move, a decision authorized by the original order. 

 We begin by noting that, because the move to Pennsylvania was contemplated at the
time of the original agreement, its eventuality was not a changed circumstance but an anticipated
circumstance and addressed in the original agreement. As a result, the move itself cannot be
evidence of a material or substantial change in this case. Therefore, Robert must rely on other
evidence of a material or substantial change that could warrant modifying conservatorship to prevent
the children from moving to Pennsylvania.

 Policy considerations concerning the relocation of children of divorced parents have
recently been reviewed extensively by Texas courts. See Lenz, 79 S.W.3d at 14-16 (considering
jurisprudence of several states concerning policy issues of relocation of children); Echols, 85 S.W.3d
at 480-481 (reviewing scholarship and jurisprudence concerning issues of divorced families); Bates
v. Tesar, 81 S.W.3d 411, 422-24 (Tex. App.--El Paso 2002, no pet.) (reviewing jurisprudential
trends in other states concerning rights of custodial parents to relocate). Although Texas policy
favors "frequent and continuous contact between the child and both parents after the dissolution of
the family of origin[,]. . . slavish adherence to such policy ignores the realities of a family that has
been dissolved." Echols, 85 S.W.3d at 480. As a result, the supreme court has noted that any
inquiry in this area of the law is "intensely fact driven." Lenz, 79 S.W.3d at 19. We recently accepted the concept that a child's best interest can and often ought to
be viewed in the context of the custodial parent's happiness. See Echols, 85 S.W.3d at 481-82. In
Echols, we considered the approaches of several jurisdictions in light of the supreme court's
discussion in Lenz, 79 S.W.3d at 14-16, and concluded that courts must "primarily concentrate on
the general quality of life for both the child and the parent in assessing whether a change is positive
and in the child's best interest." Echols, 85 S.W.3d at 481-82. In this case, Kathleen produced
strong evidence that she would benefit tremendously from the move to Pennsylvania. She would be
able to continue to provide daily care for the children while finishing her education. She would
benefit from strengthening her relationship with her mother, and her mother would be able to
supervise the children, thus minimizing the expense of childcare. She would reduce her monthly
expenses by not paying rent. In addition, the children would receive a comparable education and
would be able to build relationships with their maternal grandmother. Although the move would
reduce Robert's time with his children, he would be able to maintain his relationship with them
through visits, telephone calls, and email. Based on the facts of this case, we conclude that the
evidence presented was legally and factually sufficient to deny the requested modification. 
Accordingly, we conclude that the court had sufficient evidence on which to exercise its discretion
and did so appropriately. We overrule Robert's issue.


CONCLUSION

 Based on the facts of this case, we conclude that the trial court had sufficient evidence
on which to deny the modification sought by Robert Hoffman and that it did so appropriately. We
affirm the judgment of the county court at law.



 __________________________________________

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: November 13, 2003
1. Robert first presented eleven "points of error." He has waived four of those points. He
argued the remaining seven points in one issue. We will consider his appeal as he presented his
argument under that sole issue.
2. At the time of the hearing, the children were nine years old.
3. The record contains ample evidence that both parents take active roles in the lives of their
children. Because neither party questions the other's parenting skills or the concern or interest the
other party exhibits in the life of the children, we need not review all of that evidence here.
4. Kathleen currently pays $1,215 per month in rent.
5. The evidence shows that in the three years since the divorce, Kathleen spent most of her
divorce settlement. That settlement included $50,000 she received from the sale of the parties'
house, $1,000 per month in spousal support, and stock in Texas Instruments and Dell, originally
valued at over $200,000 but quickly devalued after the divorce. Child support had been set at $1,894
per month.