# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00062-CV

**Robert Dean Hoffman, II, Appellant**

**v.**

**Kathleen Mary Hoffman, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
## NO. 99-113-FC1, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal concerns a motion to modify in a suit affecting the parent-child relationship between Robert Dean Hoffman, II and Kathleen Marie Hoffman. The parties agreed in their divorce decree that Kathleen, as the custodial joint managing conservator for their two children, would have the right to establish the primary residence for the children in Williamson County, Travis County, or a contiguous county until July 1, 2002. When Kathleen prepared to move to Pennsylvania after that date, Robert filed a motion to modify and argued that the circumstances of the children, a conservator, or other party had materially and substantially changed and warranted a modification of the conservatorship agreement. The trial court denied his motion and filed findings of fact and conclusions of law. On appeal, Robert argues in one issue that the trial court erred in not

finding a material and substantial change in circumstances and that the move is not in the best

interest of the children.[1]  We affirm the trial court's judgment.

## BACKGROUND

Robert and Kathleen met and married in Pennsylvania and subsequently moved to

Texas.  They had two children—Robert Dean Hoffman, III (Bobby) and Kathryn Paige Hoffman

(Katie), who are twins.[2]  The families of both Robert and Kathleen still live in Pennsylvania.  Robert

and Kathleen were divorced in Williamson County on August 23, 1999.  In the divorce decree, the

parties defined their custody and visitation rights and were granted joint managing conservatorship

of the children, with Kathleen having the exclusive right to determine the children's primary

residence.  The decree also restricted Kathleen's rights by declaring that

> the primary residence of the children shall be within Williamson County, Texas,
> or contiguous counties, and the parties shall not remove the children from within
> Williamson County, Texas, or Travis County, Texas, or contiguous counties for
> the purpose of changing the primary residence of the children until the earliest
> occurrence of one of the following specified events: (1) written agreement signed
> by the parties and filed with the Court; (2) July 1, 2002; or (3) the date the
> Petitioner, Robert Dean Hoffman, II moves from Williamson County, Travis
> County, or contiguous counties.

The divorce decree also reflects the agreement of the parties to a separate set of visitation rights for

Robert should the parties reside more than 100 miles apart from each other.

---

[1]  Robert first presented eleven "points of error."  He has waived four of those points.  He argued the remaining seven points in one issue.  We will consider his appeal as he presented his argument under that sole issue.

[2]  At the time of the hearing, the children were nine years old.

Sometime in December 2001 or January 2002 Kathleen notified Robert of her plans to fulfill her long-stated intention of returning to Pennsylvania with the children to live with her mother. On January 29, 2002, Robert filed a petition to modify the parent-child relationship in which he sought to change the primary residence restriction by extending the time-restriction in the original order to enforce the geographic restriction on the children's residence until they reach age eighteen or graduate from high school. On April 25, Robert amended his petition to have the trial court grant him the right to determine the primary residence of the children and, in the alternative, to change the primary residence restriction.

On May 3, the court appointed a psychologist, June Shepherd, to determine if a move to Pennsylvania would be traumatic to the children. In her report, Shepherd stated that the children are emotionally close to both parents and upset at the prospect of a move out-of-state. However, she also found that the move would not be traumatic for the children. She found both Kathleen and Robert to be excellent parents.[3] Finally, she noted some concerns regarding Bobby's IQ and speech difficulties. As a result, she recommended that Bobby receive speech and psychoeducational evaluations.

At the hearing on the motion to modify on August 16, 2002, the court heard evidence concerning the circumstances of the children. In addition to admitting Shepherd's report into evidence, the court heard testimony of: both parties; Michelle Blakesley, the assistant principal at the children's school; and Bobby's third-grade teacher, Nancy Larson, among others. Blakesley

---

[3] The record contains ample evidence that both parents take active roles in the lives of their children. Because neither party questions the other's parenting skills or the concern or interest the other party exhibits in the life of the children, we need not review all of that evidence here.

3

testified that she reviewed Bobby's school performance in order to determine if he needed special services from the school. She testified that she had consulted with a building referral committee, which makes the decisions as to whether a child needs special services. She testified that Bobby was performing at grade level, and that the committee had considered any speech problems that had been noticed or reported and ultimately concluded that Bobby was not in need of further special services from the school. Larson testified that Bobby makes good grades, in the A to B range, and that she had noticed small speech problems, but that the kind of speech problems he exhibited were not uncommon in the third grade and were not interfering with Bobby's academic progress.

Kathleen testified about the circumstances of her move to Pennsylvania. She plans to move in with her mother, who will be able to help her in raising the children. Kathleen will contribute money for household expenses but will not pay rent.[4] She has also made plans for the children's education after the move and has met with the principal of the school the children are to attend. She offered evidence that the quality of the school system where she plans to move is comparable to the quality of the school system in which the children are currently enrolled. She also has evaluated the opportunities the children will have to be involved in activities similar to those they enjoy in Texas.

Since the divorce, Kathleen has provided the day-to-day care for the children. She has not worked. Rather, she has lived on money she received in the divorce settlement, agreed-upon spousal support, and child-support payments.[5] During this time, she has also been studying to

[4] Kathleen currently pays $1,215 per month in rent.

[5] The evidence shows that in the three years since the divorce, Kathleen spent most of her divorce settlement. That settlement included $50,000 she received from the sale of the parties'

4

receive a college degree. The evidence indicates that she has made arrangements to continue her studies after her move. She believes her employment opportunities will be better in Pennsylvania, she will be better able to finish her education because her mother will help with childcare, and she will have a wider support network in Pennsylvania.

Finally, Kathleen testified that the children will be able to maintain regular communication with their father through email and telephone calls, in addition to regularly scheduled visitation. She identified available airline flights between Austin and Pittsburgh, which is about an hour from her proposed residence.

Robert testified that the children's move to Pennsylvania will reduce their time with him from 153 days to fifty-three days out of the year. In addition, the children's travel time would involve six hours of flight time per trip, plus at least two hours spent on traveling to and from airports. He also stressed the activities in Texas that the children enjoy, the friends and other personal relationships they have in Texas, and the importance of the personal relationship he has with the children, which is built on the opportunity to eat regular meals with them, to attend school events, and to hike and camp with them. Robert also offered the testimony of two friends who spoke to the depth of his relationship with the children. Finally, Robert admitted that he agreed to the original three-year geographic restriction with the knowledge that Kathleen intended to move to Pennsylvania at some point after its expiration. He said that he agreed to the three-year restriction

---

house, $1,000 per month in spousal support, and stock in Texas Instruments and Dell, originally valued at over $200,000 but quickly devalued after the divorce. Child support had been set at $1,894 per month.

with the intention of re-litigating the conservatorship agreement when such a move might actually occur.

Both parents testified extensively about the poor level of communication that exists between them. They spoke of difficulties arranging and modifying visitations, scheduling activities, communicating with teachers and school officials, and updating each other as to the health and well-being of their children. This testimony is supported by the findings in Shepherd's report, which also noted that the children have been adversely affected by their parents' inability to communicate with each other.

On November 7, the court denied Robert's motion and modified the divorce decree to reflect the standard visitation guidelines for situations of distances of over 100 miles. At Robert's request, the court made findings of fact and conclusions of law. Among these findings of fact, the court determined:

12. The move to Pennsylvania would be in the best interest of the children.

13. It will not be traumatic to the children to move to Pennsylvania.

14. It is in the best interest of the children to move to Pennsylvania with their mother.

15. There has not been a substantial and material change in circumstances since the entry of the previous order.

16. The custodial parent supplies the child [sic] with basic quality of life.

17. Both educational and professional opportunities for the custodial parent as well as cost of living will be improved by the move to Pennsylvania.

18. It would not be in the children's best interest to impose a restriction on the right to establish primary residence.

19. It will be feasible to maintain the relationship between the non-custodial parent and the children through suitable visitation arrangements.

20. There are available and safe travel arrangements that can be made to facilitate visitation in Pennsylvania.

21. Good cause exists for Respondent [Kathleen Hoffman] to wish to relocate to Pennsylvania.

22. The move will not negatively impact the quality of the children's future contact with the non-custodial parent.

23. The relocation will not deprive the non-custodial parent of regular and meaningful contact with the children.

24. The children would benefit from their mother's increased educational and employment opportunities in Pennsylvania.

25. Both Petitioner and Respondent have extensive family, personal, and cultural ties to the State of Pennsylvania.

26. The custodial parent and the children's lives will be enhanced by the educational, economic and professional benefits of the move.

Robert filed a motion for new trial, which the trial court denied. This appeal followed.

## DISCUSSION

Robert attacks the trial court's findings in one issue—that the evidence is legally and factually insufficient to support the trial court's finding that no material or substantial change in circumstances affecting a party or a child existed and that the findings are against the best interests of the children. *See* Tex. Fam. Code Ann. § 156.101(1) (West 2002). We disagree.

7

Robert makes two arguments based on his view that a material and substantial change has occurred. First, he asserts that the distance between Pennsylvania and Texas, the change in the nature and quality of the children's contacts with him, a change in his ability to maintain regular and meaningful access to his children, and the wishes of the children to maintain contact with him render the circumstances materially and substantially changed. Evidence of these changes, he argues, should have compelled the court to grant him the right to determine the children's residency. Second, he believes that Kathleen's move is itself a material and substantial change in their situation, and thus should have compelled the trial court to re-impose a geographic restriction until the children are eighteen.

To review the evidence under a legal sufficiency or "no-evidence" point, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994); *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Crye*, 907 S.W.2d at 499; *Moriel*, 879 S.W.2d at 25.

In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.); *Lindsey*

8

*v. Lindsey*, 965 S.W.2d 589, 591 (Tex. App.—El Paso 1998, no pet.). A factual sufficiency issue requires the reviewing court to consider and weigh all the evidence and to set aside the judgment only if the evidence is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *In re King's Estate*, 244 S.W.2d at 660. We will not substitute our judgment for that of the trier of fact merely because we reach a different conclusion. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

The question of conservatorship of a child is addressed to the sound discretion of the trial court when it sits as trier of fact. *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex. Civ. App.—Dallas 1981, no writ). The trial court is in the best position to observe the demeanor and personalities of the witnesses and to discern factors not obvious by merely reading the record. *Id*. In determining issues of conservatorship and possession of a child, the primary consideration of the court is the best interest of the child. *See* Tex. Fam. Code Ann. § 153.002 (West 2002). However, Texas has no bright-line test to determine what is the best interest of the children. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). Rather, each case must be decided on its unique set of facts. *See id*. We review a trial court's decision in a case concerning a modification of conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). A trial court abuses its discretion if it acts arbitrarily or without reference to guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Coleman*, 109 S.W.3d at 110. We may not reverse for abuse of discretion merely because we disagree with a decision of the district court. *Downer*, 701 S.W.2d at 242. Finally, a court's determination of whether a material and substantial

9

change has occurred is not guided by rigid rules and is fact-specific. *See In the Interest of Z.B.P.*, 109 S.W.3d 772, 779 (Tex. App.—Fort Worth 2003, no pet.).

This standard of review has been distilled into a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *See Echols*, 85 S.W.3d at 477-78; *Lindsey*, 965 S.W.2d at 592. According to this inquiry, the traditional sufficiency review comes into play with regard to the first question. *Echols*, 85 S.W.3d at 478. An appellate court then proceeds to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

We first consider Robert's argument that the trial court erred by finding no material or substantial change in circumstances warranting a modification regarding which parent should have the right to determine the residency of the children. Robert points the court to evidence that he characterizes as showing: Kathleen's "spendthrift ways, her unwillingness to work, her inflexibility with visitation, her intentional lack of resources, her disregard for the court psychologist's recommendation" that Bobby receive speech therapy and a psychoeducational evaluation, and the trauma that her communication problems with Robert cause the children. However, evidence also exists in the record that much of the divorce settlement sharply decreased in value soon after the divorce, that she has attended classes in order to earn a college degree, and that she has complied with visitation orders. In addition, Kathleen offered evidence that Bobby has not received extensive psychoeducational treatment because the professional judgments of his teacher and assistant principal, who work with Bobby every day at school, indicated that such treatment was not necessary. She also offered evidence that Bobby was performing at or above grade level in school.

10

We note further that the record contains evidence that the communication problems between the parties implicate both parties rather than just Kathleen. We cannot find this evidence to be without weight. Finally, the trial court's findings of facts indicate that the court considered all of this evidence when it made its decision. That the court did not agree with Robert does not mean that the court ignored the evidence in the record. Accordingly, we conclude that the court had sufficient evidence on which to exercise its discretion and did not err in its application of that discretion.

Next, Robert argues that Kathleen's move to Pennsylvania is itself a material and substantial change and thus warrants a change to the conservatorship order to renew the geographic limitation on the children's residence. When Robert and Kathleen divorced, their agreed order clearly contemplated a geographic restriction for only three years. Even though both parties knew at that time that Kathleen desired to return to Pennsylvania, Robert is now seeking to modify that agreement and order. As a result, we must consider the question of whether the evidence is legally and factually sufficient to show that circumstances changed in a material and substantial way when Kathleen decided to move, a decision authorized by the original order.

We begin by noting that, because the move to Pennsylvania was contemplated at the time of the original agreement, its eventuality was not a changed circumstance but an anticipated circumstance and addressed in the original agreement. As a result, the move itself cannot be evidence of a material or substantial change in this case. Therefore, Robert must rely on other evidence of a material or substantial change that could warrant modifying conservatorship to prevent the children from moving to Pennsylvania.

11

Policy considerations concerning the relocation of children of divorced parents have recently been reviewed extensively by Texas courts. *See Lenz*, 79 S.W.3d at 14-16 (considering jurisprudence of several states concerning policy issues of relocation of children); *Echols*, 85 S.W.3d at 480-481 (reviewing scholarship and jurisprudence concerning issues of divorced families); *Bates v. Tesar*, 81 S.W.3d 411, 422-24 (Tex. App.—El Paso 2002, no pet.) (reviewing jurisprudential trends in other states concerning rights of custodial parents to relocate). Although Texas policy favors "frequent and continuous contact between the child and both parents after the dissolution of the family of origin[,]. . . slavish adherence to such policy ignores the realities of a family that has been dissolved." *Echols*, 85 S.W.3d at 480. As a result, the supreme court has noted that any inquiry in this area of the law is "intensely fact driven." *Lenz*, 79 S.W.3d at 19.

We recently accepted the concept that a child's best interest can and often ought to be viewed in the context of the custodial parent's happiness. *See Echols*, 85 S.W.3d at 481-82. In *Echols*, we considered the approaches of several jurisdictions in light of the supreme court's discussion in *Lenz*, 79 S.W.3d at 14-16, and concluded that courts must "primarily concentrate on the general quality of life for both the child and the parent in assessing whether a change is positive and in the child's best interest." *Echols*, 85 S.W.3d at 481-82. In this case, Kathleen produced strong evidence that she would benefit tremendously from the move to Pennsylvania. She would be able to continue to provide daily care for the children while finishing her education. She would benefit from strengthening her relationship with her mother, and her mother would be able to supervise the children, thus minimizing the expense of childcare. She would reduce her monthly expenses by not paying rent. In addition, the children would receive a comparable education and

would be able to build relationships with their maternal grandmother. Although the move would reduce Robert's time with his children, he would be able to maintain his relationship with them through visits, telephone calls, and email. Based on the facts of this case, we conclude that the evidence presented was legally and factually sufficient to deny the requested modification. Accordingly, we conclude that the court had sufficient evidence on which to exercise its discretion and did so appropriately. We overrule Robert's issue.

## CONCLUSION

Based on the facts of this case, we conclude that the trial court had sufficient evidence on which to deny the modification sought by Robert Hoffman and that it did so appropriately. We affirm the judgment of the county court at law.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: November 13, 2003

13