**Sheila Rena PATTERSON, Appellant,**

v.

**Clint Allen BRIST, Appellee.**

**No. 01–05–00798–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 26, 2006.

Bruce A. Baughman, Baytown, TX, Greg Abbott, Office of the Atty. Gen., Austin, TX, for Appellant.

Myrna J. Dunnam, Baytown, TX, Walter P. Mahoney Jr., The Mahoney Law Firm, Pasadena, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

SAM NUCHIA, Justice.

This appeal arises from a suit to modify an order naming one parent as having the exclusive right to designate the primary residence of C.A.B., the 12—year—old child of appellant, Sheila Rena Patterson, and appellee, Clint Allen Brist. After a hearing and an *in camera* interview with C.A.B., the trial court ordered that Brist be appointed joint managing conservator with the right to designate the residence of C.A.B. On appeal, Patterson asserts that the trial court abused its discretion because the evidence is legally and factually insufficient to support the trial court's finding that it is in C.A.B.'s best interest to reside with Brist.[1] We affirm.

## DISCUSSION

Section 156.101 of the Family Code, entitled Grounds for Modification of Order Establishing Conservatorship or Possession and Access, provides in relevant part:

> The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be *in the best interest of the child* and:
>
> (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
>
> > (A) the date of the rendition of the order; or
> >
> > (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based;
>
> (2) *the child is at least 12 years of age and has filed with the court, in writing, the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child;* or
>
> (3) the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

TEX. FAM.CODE ANN. § 156.101 (Vernon 2005) (emphasis added).

Here, C.A.B. has expressed in an affidavit and, presumably, in the *in camera* interview with the trial court, his preference to reside with his father. Therefore, the only issue for us to resolve is whether the trial court abused its discretion in determining that the change in primary residence was in C.A.B.'s best interests. *See Ellason v. Ellason,* 162 S.W.3d 883, 888 (Tex.App.-Dallas 2005, no pet.) (holding, "A court may modify an order providing the terms and conditions of conservatorship if the modification would be in the best interests of the child and the child is at least twelve years of age and has filed with the court, in writing, the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child.").

### Standard of Review

■ We review a trial court's decision on custody, control, possession, and visitation matters for abuse of discretion, and

---

1. Patterson's brief also asserts that the trial court erred in ordering her to pay child support. However, other than mentioning the issue of child support in her statement of the issue, she did not brief the issue. Thus, this issue is waived. *See RE/MAX of Texas, Inc. v.*

*Katar Corp.,* 961 S.W.2d 324, 328 (Tex.App.-Houston [1st Dist.] 1997) (concluding that appellant's failure to make argument, cite authority, or refer to record in support of contention resulted in nothing for court to review), *pet. denied,* 989 S.W.2d 363 (Tex.1999).

reverse the trial court's order only if we determine, from reviewing the record as a whole, that the trial court abused its discretion. *Turner v. Turner*, 47 S.W.3d 761, 763 (Tex.App.-Houston [1st Dist.] 2001, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id.* We view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied). An allegation of legal or factual insufficiency is not treated as an independent ground of error in this context because the appropriate standard of review is abuse of discretion. *Hardin v. Hardin*, 161 S.W.3d 14, 19 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Sufficiency challenges are incorporated into an abuse of discretion determination. *McGuire v. McGuire*, 4 S.W.3d 382, 387 n. 2 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

## Analysis

■ The Family Code's statutory scheme focuses on the children's welfare and best interest. TEX. FAM.CODE ANN. § 153.002 (Vernon 2005); *See Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex.2002) (reiterating legislature's mandate that best interest of child is primary consideration). Courts have generally considered nine non-exclusive factors set out in *Holley v. Adams* in determining the best interest of the child. 544 S.W.2d 367 (Tex.1976). Those factors are (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent, which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* at 372. We consider these factors as they relate to this case.

■ In this case, the trial court heard evidence from both parties supporting the conclusion that placing C.A.B. in the Brist home would provide a more stable and emotionally, mentally, and physically supportive environment for C.A.B. than Patterson's home. Over the past five years, as he has matured, C.A.B. has developed a very close relationship with Brist. He has become his father's "shadow" and is "very absorbent" of his father's time. In her testimony in the trial court, Patterson said that Brist has become C.A.B.'s "best friend." Both Brist and his present wife, Stephanie, testified that C.A.B. enjoys participating in outdoor activities with his father, including mowing the lawn, roping and horseback riding, and playing baseball. Brist was described as a "very hands on" father, and Brist testified that he wanted his relationship with C.A.B. to continue to grow. The Court heard testimony that C.A.B. is very mature for a 12 year old and that after speaking with both Brist and Patterson, it was also his desire to spend even more time with his father. Moreover, the trial court conducted an *in camera* interview with C.A.B. in which he apparently expressed a preference for living with Brist. Patterson testified that she took C.A.B. to her attorney's office to sign the declaration that he wanted to live with her, but that C.A.B. would not sign it. Patterson testified that although she disagreed with Brist regarding where C.A.B. should live, Brist loved and cared for C.A.B. and only wanted what was best for

him. Patterson testified that Brist's wishes, desires, and plans for C.A.B. were the same as hers—that C.A.B. grow up to be a well-adjusted child. She also testified that Brist was as good a parent as she was to C.A.B.

The Court heard testimony that the Brist home is emotionally stable and could provide for C.A.B.'s needs. Brist testified that there was nothing bad or dangerous to C.A.B. in the Brist home. C.A.B. has a very good relationship with his father, his two step-brothers, who are close to his age, and his step-sister. He and his step-brothers are best friends, and he has developed other friends his own age and close to his age in the community where Brist lives. He also has a good relationship with Brist's relatives. Stephanie Brist testified that their home was very family oriented and that all the kids participated in extra-curricular activities. Mrs. Brist testified that she would actively participate with Brist in taking care of C.A.B. and would also take C.A.B. to his extra-curricular activities after school. Brist testified that, because his wife is the secretary at the school where C.A.B. would attend, they would be able to be more active in his school activities.

The Court also heard testimony that both Brist and Stephanie Brist were committed to doing what was financially and emotionally best for their family, including C.A.B. Brist testified that, three years ago, he left a higher paying job with Colonial Pipeline to become self employed in the pest control business in order to spend more time with his family. He testified that his job at Colonial Pipeline often required him to work graveyard shifts and travel. He testified that as a result of this decision he was now able to work just one mile from home and spend every evening with his family. Although during the first few years of self employment he has not made as much money as he did while employed with Colonial Pipeline, Brist testified that his income has increased every year since he started his business and that he expected his yearly income to continue to increase.

At the hearing, Patterson's counsel argued that this custody proceeding was nothing more than an attempt by Brist to avoid paying back and future child support to Patterson. However, the Court heard testimony that the custody change was initiated by C.A.B. and was his decision, not Brist's. The Court also heard testimony that, although Brist failed to provide continuous insurance coverage for C.A.B. and had owed back child support, this occurred while he was starting up his new business, and these issues had been resolved by the time of the custody hearing.

While living with Brist, C.A.B. may not be able to participate in the same college level courses offered by the Goose Creek I.S.D., where he attended school while living with Patterson. Although Chambers County has honors program courses, they are not all identical to those in C.A.B.'s current school. Nevertheless, there was no testimony that his new school in Chambers County was either substandard or that C.A.B. would not receive a good education. C.A.B. is an honors student who is active in school activities, and there was no testimony that his level of interest in education or participation in extra-curricular activities would change if he were to live with Brist. Patterson admitted that C.A.B.'s happiness was going to be a factor in how well he performed in school no matter where he went to school.

The court also heard testimony regarding the location and physical arrangements of Brist's and Patterson's homes. The court heard testimony that Patterson's suburban home was larger than the Brist home, which is located in rural east Cham-

bers County. Patterson testified that she lived with her current husband in a subdivision in Baytown. In this home, C.A.B. has his own room and a spare room that has his video game set up, drums, and other items of leisure. The Court heard testimony that Brist and his current wife live in a sixteen-foot by eighty-foot mobile home on a family-owned eight-acre tract. The living arrangements at the mobile home are as follows: Brist and his wife have the master bedroom, the seven-year-old daughter occupies her own bedroom, and C.A.B. shares the other bedroom with his step-brothers. Despite the differences in home size and location, there was no evidence that the Brist home was unstable or an undesirable place for C.A.B. to live. To the contrary, the court heard testimony that C.A.B. was not unhappy about sharing a room with his step-brothers or living in a more rural area, and Patterson had no criticism of the fact that the Brist family made their home in a trailer.

The Court heard testimony that neither Brist nor Patterson were perfect parents and that both had lapses in their parenting skills. Patterson testified that she believed that Brist, while "not a bad parent," is sometimes careless about safety issues. She testified that Brist allowed C.A.B. to drive Brist's pickup truck on the eight-acre tract on which his family's mobile home sits and that Brist allowed C.A.B. and his two step-brothers to play with firecrackers. She also testified that on one occasion he forgot to make sure on a visitation week that C.A.B. had his asthma inhaler. However, Brist testified that, when his wife informed him that he had forgotten the asthma inhaler, instead of having her meet him half-way between their two houses to retrieve the inhaler, he went back to her house to pick it up. On cross-examination, Patterson conceded that she allowed C.A.B. to stay home unattended all day during the summer and that

she allowed him to ride a motorized vehicle, a scooter, on the street in their subdivision cul de sac. The trial court expressed concern that C.A.B. was allowed to stay at home alone during the summer.

## CONCLUSION

Viewing all the evidence in a light most favorable to the trial court's decision, we cannot say that the trial court's judgment was arbitrary or unreasonable. Accordingly, we hold that the trial court did not abuse its discretion in appointing Brist as joint managing conservator with the exclusive right to designate C.A.B.'s primary residence. We overrule appellant's sole point of error and affirm the judgment of the trial court.

Justice HANKS, concurring.

Justice KEYES, dissenting.

En banc consideration was requested.

A majority of the Court voted to deny en banc consideration.

Justice JENNINGS, dissenting from the denial of en banc consideration.

GEORGE C. HANKS, JR. Justice, concurring.

I respectfully concur and join the majority opinion. The trial court's finding, that a change in C.A.B.'s primary residence was in his best interest, was based, in part, on its interview of C.A.B. in chambers. As stated in the majority opinion, this interview was not recorded and Patterson did not object to the absence of a transcript of this interview on appeal. As a result, while there may be some facts in the record that do not support the trial court's finding, we do not have the entire record of the proceedings below. Where we have only a partial record of the trial proceedings, we presume that the omitted portions

support the trial court's ruling. This presumption specifically applies in family law cases where the judge conducts interviews in chambers with a minor. *Long v. Long* 144 S.W.3d 64, 69 (Tex.App.-El Paso 2004, no pet.); *Voros v. Turnage,* 856 S.W.2d 759, 763 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (holding that where complaining party failed to request a record of a child in chambers, the reviewing court will presume that the evidence is sufficient to support the judge's findings); *Ohendalski v. Ohendalski,* No. 09–05–222–CV, 2006 WL 2788600, at *5 (Tex.App.-Beaumont Sept.28, 2006, no pet. h.) (presuming evidence from unrecorded in chambers interview supports judge's findings and finding no abuse of discretion). Thus, "[c]onsidering that the trial court interviewed the [child] in chambers, we must presume facts existed to support the modification and that allowed the judge to find that the change in the [child's] primary residence was in [his] best interest." *Long,* 144 S.W.3d at 71. Accordingly, given the evidence before us, I cannot find that the trial court abused its discretion in making its findings in this case.

EVELYN V. KEYES, Justice, dissenting.

The majority opinion misconceives and misapplies the standard of review of modification of conservatorship of a child. It affirms a clearly arbitrary and capricious trial court judgment that removed a fit mother as sole managing conservator of her child and appointed the father as primary conservator with the right to establish residency solely on the basis of a 12–year–old child's stated preference for living with his father, although the change was unjustifiable under all applicable legal criteria. Because I believe the majority opinion is both wrong on the law and manifestly unjust on the facts, and because it puts this Court squarely in opposition to the well-established standard of review of modification of conservatorship adopted by the Texas Supreme Court, by all other intermediate appellate courts, and previously by this Court, I dissent.

I would reverse the judgment of the trial court and render judgment that the prior conservatorship order and child support order be reinstated, together with the order of criminal contempt entered against the father, Clint Brist, for failure to pay child support and to maintain health insurance on the child, C.A.B.

## FACTS

The majority omits numerous facts material to the correct disposition of this case under applicable law. The omitted procedural facts are recited here, and the evidentiary facts are reviewed below.

Sheila Patterson and Brist were divorced when their son, C.A.B., was 1 year old. Patterson was appointed sole managing conservator of C.A.B., and Brist was appointed possessory conservator and ordered to pay child support. The trial court's judgment in the suit for modification of conservatorship (SAPCR) giving rise to this appeal removed Patterson, C.A.B.'s mother, as sole managing conservator, appointed C.A.B.'s father, Brist, as joint managing conservator with the exclusive right to determine C.A.B.'s residence, and ordered Patterson to pay 20% of her net resources to Brist for child support.

At the time suit was filed, C.A.B. was 11 years old and had lived with his mother, Patterson, and apart from his father, Brist, since the age of one. Brist, who had been denied standard visiting rights in the original conservatorship decree, originally brought this suit in 2004 only to increase his visitation rights. At the time, he was in arrears in making child support payments and had failed to maintain health

insurance on C.A.B., as ordered by the trial court. After Brist's suit was filed, Patterson filed a motion to increase child support, and the State of Texas intervened and brought a contempt action against Brist seeking a judgment for arrearages for child support and almost $2,000 in health insurance premiums. Brist then moved to be named joint conservator with the right to designate C.A.B.'s residence. C.A.B., having turned 12 years old, then filed his request to live with his father.

While Brist denied that his desire to be named primary conservator was to avoid paying child support, he admitted that he had voluntarily left his job making $40,000 two years prior to the modification hearing, had made only $5,800 the previous year as a self-employed exterminator, and expected to make between $18,000 and $20,000 in 2005. Indeed, after Brist left his job, he went on welfare and medicaid, and C.A.B. was placed in the CHIP's program. At the time of the modification hearing, Patterson was maintaining health insurance on C.A.B. and Brist was not.

At the beginning of the hearing on modification of conservatorship, an agreement between the parties was read into the record under which Brist was to be held in criminal contempt of court for failure to pay arrearages in the amount of $734.35, plus $1,935.18 in unreimbursed health insurance premiums on C.A.B. Brist was to be sentenced to 30 days in jail, probated for 16 months on condition that he pay Patterson $734.35 and $500 in attorney's fees immediately, on June 10, 2005, and another $500 and court costs on July 15, 2005, and that he make monthly payments to Patterson of $168.24 beginning August 1, 2005 for 9 months and afterwards make three payments of $140.34, for a total amount of $2,600 (or half of his total income the previous year). After questioning Brist about his understanding of the terms of the contempt agreement, the trial court approved the agreement. However, at the conclusion of the hearing the trial court ordered that Brist be named joint managing conservator, that C.A.B. live with him, and that Patterson pay Brist 20% of her net resources for C.A.B.'s support, presumably negating the contempt finding.

The only findings of fact made by the trial court were (1) that it was in the best interest of the child, C.A.B., that his parents be appointed joint managing conservators and that his father, Brist, have the exclusive right to designate C.A.B.'s primary residence and (2) that C.A.B. had filed a preference with the court asking that his father, Brist, rather than his mother, Patterson, establish his primary physical residence. In accordance with its change of conservatorship, the trial court found that the periods of possession it was awarding Patterson complied with the Standard Possession Order and that the amount of child support it ordered her to pay was "in accordance with the percentage guidelines," namely, 20% of her net resources.

## STANDARD OF REVIEW

The correct standard of review of a district court judgment modifying conservatorship is well established. An appellate court reviews a trial court's modification of joint managing conservatorship of a child under an abuse of discretion standard. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982); *Long v. Long,* 144 S.W.3d 64, 67 (Tex.App.-El Paso 2004, no pet.); *In re T.D.C.,* 91 S.W.3d 865, 872 (Tex.App.-Fort Worth 2002, pet. denied); *Bates v. Tesar,* 81 S.W.3d 411, 425 (Tex.App.-El Paso 2002, no pet.). The trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to any guiding principles. *Downer v. Aquamarine*

*Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Long,* 144 S.W.3d at 67; *In re T.D.C.,* 91 S.W.3d at 872; *Bates,* 81 S.W.3d at 425. Legal and factual sufficiency of the evidence are not independent grounds of error, but relevant factors in determining whether the trial court abused its discretion. *In re T.D.C.,* 91 S.W.3d at 872; *Bates,* 81 S.W.3d at 425; *In re Marriage of Bertram,* 981 S.W.2d 820, 822 (Tex.App.-Texarkana 1998, no pet.).

In determining whether the trial court abused its discretion in modifying conservatorship, the appellate court applies a two-pronged test: "(1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the trial court erred in its application of discretion." *Long,* 144 S.W.3d at 67–68. That is, the reviewing court determines, first, whether the evidence was legally and factually sufficient for the trial court to support a decision on modification and, second, whether the decision made was reasonable. *See Long,* 144 S.W.3d at 68. A clear failure by the trial court to analyze or apply the law to the facts correctly is an abuse of discretion. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *In re M.N.G.,* 113 S.W.3d 27, 32 (Tex.App.-Fort Worth 2003, no pet.).

In conducting a legal sufficiency, or "no evidence" review, we consider the evidence in the light most favorable to the trial court's judgment, disregarding all evidence and inferences to the contrary unless reasonable jurors could not do so. *City of Keller v. Wilson,* 168 S.W.3d 802, 810–11 (Tex.2005); *see also Bates,* 81 S.W.3d at 425. We do not disregard contrary evidence if (a) there is no favorable evidence, or (b) contrary evidence renders supporting evidence incompetent, or (c) contrary evidence conclusively establishes the opposite. *City of Keller,* 168 S.W.3d at 810–11. Anything more than a scintilla of probative evidence is legally sufficient to support the trial court's finding. *See Long,* 144 S.W.3d at 66; *In re T.D.C.,* 91 S.W.3d at 872.

In determining whether the evidence was factually sufficient to support the trial court's judgment, the court of appeals reviews the trial court's findings under the same standards used in reviewing jury answers. *In re Z.B.P. and J.N.P.,* 109 S.W.3d 772, 776–77 (Tex.App.-Fort Worth 2003, no pet.); *Bates,* 81 S.W.3d at 426. We consider all the evidence and set aside the findings only if we find that they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re Z.B.P. and J.N.P.,* 109 S.W.3d at 777; *Bates,* 81 S.W.3d at 425–26.

## MODIFICATION OF CONSERVATORSHIP

With only a brief reference to the standard of review of modification orders, and with virtually no legal analysis or any reference to controlling law,[1] the majority concludes that a court may modify a child conservatorship order merely by determining that a 12–year–old child has filed with the court the name of the person with whom the child prefers to live and then deciding on its own that modification is "in

---

1. The majority simply italicizes the language it is relying on in the statute and cites to *Ellason v. Ellason,* 162 S.W.3d 883, 888 (Tex. App.-Dallas 2005, no pet.), as its sole authority for its construction of section 156.101. *Ellason* is not controlling authority within this jurisdiction and is incorrect, to the extent, if any, it implies that a district court may overcome a prior conservatorship order and modify sole managing conservatorship without applying the factors established by case law to determine the child's "best interest."

the best interest of the child." That is an incorrect analysis of the law.

Section 156.101 of the Family Code, governing modification of conservatorship of a child, provides,

> The court may modify an order or portion of a decree that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the *best interest of the child and:*
>
> (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order;
>
> (2) *the child is at least 12 years of age and has filed with the court, in writing, the name of the conservator who is the child's preference to have the exclusive right to determine the primary residence of the child;* or
>
> (3) the conservator who has the exclusive right to establish the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

TEX. FAM.CODE ANN. § 156.101 (Vernon 2002).

Texas provides that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession and access to the child." *Id.* § 153.002 (Vernon 2002); *Lenz v. Lenz,* 79 S.W.3d 10, 14 (Tex.2002) (reiterating legislature's mandate that best interest of child is primary consideration); *In re C.Q.T.M.,* 25 S.W.3d 730, 734 (Tex.App.-Waco 2000, pet. denied); *Long,* 144 S.W.3d at 68; *In re Marriage of Bertram,* 981 S.W.2d at 822 ("court's primary consideration in deter-

mining conservatorship, possession, and access is the best interest of the child").

A party seeking to alter conservatorship of a child must, therefore, come forward with evidence concerning the best interest of the child that has developed since the initial conservatorship order, since the appointment of the existing managing conservator is *res judicata* as to the best interest of the child at the time of the original decree awarding conservatorship. *See Knowles v. Grimes,* 437 S.W.2d 816, 817 (Tex.1969) (once conservatorship order has been implemented, that order establishes what was in best interest of the child at time of divorce and *res judicata* attaches); *Ogletree v. Crates,* 363 S.W.2d 431, 434 (Tex.1963); *In re P.D.M. and K.E.M.,* 117 S.W.3d 453, 463 (Tex.App.-Fort Worth 2003, pet. denied); *In re M.N.G.,* 113 S.W.3d at 33–34; *Bates,* 81 S.W.3d at 421; *Scroggins v. Scroggins,* 753 S.W.2d 830, 832 (Tex.App.-Houston [1st Dist.] 1988, no writ).

The State has a compelling interest in protecting the child's need for stability and in preventing constant litigation. *In re M.N.G.,* 113 S.W.3d 27, 36 (Tex.App.-Fort Worth 2003, no pet.); *see also Mumma v. Aguirre,* 364 S.W.2d 220, 221 (Tex.1963) (citation omitted) ("the law favors a high degree of stability in a young child's home and surroundings, and to achieve that stability will not permit change of custody, once judicially determined, except upon showing of materially changed conditions, ... and will not require it, even then, unless denying it would constitute an abuse of discretion by the trial judge."); *In re Marriage of Chandler,* 914 S.W.2d 252, 254 (Tex.App.-Amarillo 1996, no writ) ("[T]he state maintains a paramount interest in fostering a stable home environment for children."); *Eason v. Eason,* 860 S.W.2d 187, 190–91 (Tex.App.-Houston [14th Dist.] 1993, no writ) (same); *Scrog-*

*gins,* 753 S.W.2d at 832. Accordingly, the long-established rule in the Texas courts is that, "[a]s a matter of public policy, there should be a high degree of stability in the home and surroundings of a young child, and, in the absence of materially changed conditions, the disturbing influence of re-litigation should be discouraged." *Knowles,* 437 S.W.2d at 817. This public policy has been codified. *See* TEX. FAM. CODE ANN. § 153.001(a)(2) ("The public policy of this state is to . . . (2) provide a safe, *stable,* and nonviolent environment for the child.") (emphasis added). "Because a change in custody usually disrupts the child's living arrangements and the channels of a child's affection, and in effect alters the entire tenor of the child's life, a change should be ordered only when the trial court is convinced that a change is to be a *positive improvement* for the child." *In re M.N.G.,* 113 S.W.3d at 36 (emphasis added). There is no meaningful distinction between "best interest" and "positive improvement." *In re T.D.C.,* 91 S.W.3d at 873 n. 6; *Turner v. Turner,* 47 S.W.3d 761, 767 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

Generally, in any type of case involving conservatorship or possession of a child the best interest of the child is determined by consideration of the *"Holley"* factors, namely:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans of the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*See Long,* 144 S.W.3d at 68; *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex.1976) (listing best interest factors in context of suit for termination of parental rights).

The courts have added other factors that should be considered in determining whether modification of a *prior* conservatorship order is in the child's best interest, particularly when the case involves a request to change the designation of the managing conservator with the right to determine the residency of the child or involves relocation. *See Long,* 144 S.W.3d at 68. Thus, in determining the child's best interest in the specific context of *modification of conservatorship,* the courts consider additional factors:

(J) the child's need for stability; and

(K) the need to prevent constant litigation in child custody cases.

*Long,* 144 S.W.3d at 68; *see also In re V.L.K.,* 24 S.W.3d 338, 343 (Tex.2000).

Finally, to determine the best interest of the child in the specific context of *relocation* litigation, the courts consider yet more factors, including but not limited to the following:

(L) the degree to which the custodial parent's and the child's life may be enhanced economically, emotionally, and educationally by the move;

(M) a comparison of the quality of lifestyle;

(N) the negative impact of any continued hostility between the parents;

(O) the effect of the move on extended family relationships; and

(P) the child's age, community ties, health and education needs, and preferences.

*Long,* 144 S.W.3d at 68; *see also Bates,* 81 S.W.3d at 434. These factors are not exhaustive or exclusive. *See Holley,* 544 S.W.2d at 372; *Long,* 144 S.W.3d at 68.

### Application of the Law to the Facts

Although the majority recites the *Holley* factors, it makes no attempt to determine whether the evidence was legally and factually sufficient under the guidelines established by the those factors to ensure that the change in conservatorship wrought by the trial court's modification order would be a *positive* change from the prior conservatorship order, *i.e.,* a change in the *best interest* of C.A.B., as required for modification of conservatorship under section 156.101. *See In re M.N.G.,* 113 S.W.3d at 36; *In re T.D.C.,* 91 S.W.3d at 873; *Turner,* 47 S.W.3d at 767. In other words, the majority does not compare the evidence in favor of retaining the prior conservatorship order with the evidence in favor of modification to determine whether it is possible to draw a reasonable inference that modification would be a positive improvement for C.A.B. under those factors. The majority simply ignores the purpose and teaching of *Holley* and its extensive progeny. *See Holley,* 544 S.W.2d at 370 (stating, in terms equally applicable in all conservatorship matters, "Termination of a parent-child relationship may not be based solely upon what the trial court determines to be the best interest of the child," and listing non-exhaustive list of factors to consider in determining whether termination would be in child's best interest); *see also In re Aubin,* 29 S.W.3d 199, 200 (Tex.App.-Beaumont 2000, no pet.) (quoting *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 2064, 147 L.Ed.2d 49 (2000) (" 'The Due Process Clause does not permit a State to infringe on the fundamental rights of parents to make child-rearing decisions simply because a state judge believes a 'better' decision could be made.' ")).

Moreover, the majority's recitation of the evidentiary facts is selective and materially misleading. The majority does not state that it is reviewing the record *only* for evidence supporting the trial court's judgment without making any attempt to compare the child's situation under the prior conservatorship order with his situation under the modification order. Nor does it state that in employing this method of reviewing the record it is omitting huge parts of the evidence contrary to the trial court's conclusion that modification was in C.A.B.'s best interest. The majority thus ignores the mandate in *City of Keller* that an appellate court may *not* disregard contrary evidence necessary to make the required legal determination (here, the determination that change in conservatorship is warranted under appropriate guidelines, *i.e.,* the *Holley* factors) if (a) there is no favorable evidence, or (b) contrary evidence renders supporting evidence incompetent, or (c) contrary evidence conclusively establishes the opposite. *See City of Keller,* 168 S.W.3d at 810–11.

As shown below, if the majority had conducted the required legal analysis by reviewing the sufficiency of the evidence under the *Holley* factors to determine whether modification would be a positive improvement for C.A.B., and therefore in his best interest, the only conclusions it could reasonably have reached were (1) that the evidence presented at trial was factually and legally insufficient to satisfy the statutory requirements for modification under section 156.101, since the conclusion could not reasonably be drawn from the evidence that modification was a

positive improvement for C.A.B. and thus in his best interest and (2) that the trial court's order modifying conservatorship was, in fact, made without any meaningful reference to the statutory mandate that a change in conservatorship must be in C.A.B.'s best interest under the *Holley* factors, and was thus arbitrary and capricious.

### *Holley Factor (A)*

It is undisputed that while Brist's suit for modification was pending C.A.B. turned 12 years old and signed an expression of his desire to live with his father, Brist. Thus *Holley* factor (A) (the desires of the child) must be taken as conclusively established in favor of modification.

### *Holley Factors (B), (C), (D), (E), (F)*

By contrast, the evidence presented relative to *Holley* factors (B) (emotional and physical needs of the child now and in the future), (C) (emotional and physical danger to the child now and in the future), (D) (parental abilities of the individuals seeking custody), (E) (programs available to assist these individuals to promote the best interest of the child), and (F) (plans for the child by these individuals) support Patterson's retention of managing conservatorship with the right to determine C.A.B.'s residence over Brist's appointment in her stead; none of this evidence supports modification.

The record shows that none of Brist's provisions for C.A.B.'s mental, emotional, and physical welfare are better than Patterson's, as required to support modification under *Holley* factors (B), (C), and (D). Rather, these factors support retaining the prior conservatorship order. Patterson's home, from which the trial court removed C.A.B., provided a much more stable and supportive environment for C.A.B. mentally, emotionally, physically, and economically than Brist's home. The record shows that C.A.B. had lived with Patterson and apart from Brist from the age of one. Patterson is a vice-president and branch manager of a bank. She works regular hours, 8:30 to 4:30 from Monday to Friday, and is normally home in the evenings. She has remarried, and C.A.B. gets along well with his stepfather. The family lives in an almost 3,000 square foot, two-story brick house on a cul-de-sac in Baytown. C.A.B. has his own bedroom with access to a game room and a computer room. Brist himself admitted at the hearing that Patterson had done an excellent job raising C.A.B., that C.A.B. loved his mother, that he was getting straight A's in school, and that he had friends in the neighborhood.[2]

There was no evidence at the hearing, with respect to *Holley* factor (B), that the quality of life would be better for C.A.B. in Brist's home. To the contrary, he and his current wife were living with her two sons from a previous marriage and their own daughter in a three-bedroom 16' by 80' mobile home on a remote eight acre tract owned by Brist's family in east Chambers County. At Brist's home, C.A.B. has to

---

**2.** The majority's summarization of the facts omits the material facts recited above that are inconsistent with its conclusion and misleadingly states, "In this case, the trial court heard evidence from both parties supporting the conclusion that placing C.A.B. in the Brist home would provide a more stable and emotionally, mentally, and physically supportive environment for C.A.B. than Patterson's home," thus incorrectly implying that Patterson's testimony could give rise to such a conclusion. The majority also states that Patterson testified "that Brist was as good a parent as she was to C.A.B." The record actually states:

Q [by Brist's counsel]: You believe Mr. Brist is just as good a parent as you, correct? Is that funny or something?
A [by Patterson]: Yes.
Q: Okay. You think it's funny?
A: No, I don't.

share a bedroom with his two stepbrothers. Brist sometimes works as late as 6:00 or 7:00 p.m. and occasionally works weekends, and his wife also works during the day.

In addition, the record demonstrates that the health and educational programs available to assist Brist in promoting the best interest of C.A.B. and the plans Brist has for C.A.B. are far inferior to the programs available to C.A.B. when in Patterson's care and to Patterson's plans for C.A.B.'s future, negating *Holley* factors (E) and (F) as support for modification. First, C.A.B.'s educational opportunities are not better, or even approximately equal, in Brist's household. In his mother's care, C.A.B. was attending a school with excellent facilities and positively recognized by the Texas Education Agency. C.A.B. was in the top 5% to 7% of his class and in an honors program. He was actively involved in extra-curricular activities, played baseball, and served on the student council. C.A.B. was scheduled to attend a junior high school in the fall that is likewise recognized as a high-performing school. He had qualified for the GATES program for gifted and talented children, under which students can take college-level courses in high school, and he was pre-enrolled for four advanced placement honors courses—in English, mathematics, history, and science. He was also pre-enrolled in an athletic program and had signed up for shop. In addition, C.A.B. had a well-established routine at his mother's house. Either his mother or his stepfather was waiting each day when he arrived home from school by bus; he was not allowed to watch television or talk on the telephone until after he had completed his homework; and, after homework, he played baseball or football with his friends or neighbors.

By contrast, Brist was not involved in C.A.B.'s school life, had not met C.A.B.'s teachers, and did not know their names. Although an honors program is available in the school in east Chambers County where Brist lives, no college-level courses are available. Moreover, the record demonstrates that Brist lives too far in the country for C.A.B. to participate in organized sports at school; and no one is available to take him to sports other than C.A.B.'s stepmother, after she returns from work as a school secretary, and then only by taking the other three children with her. C.A.B.'s stepmother admitted she does not read newspapers; and there was unrebutted testimony by Patterson that Brist admitted homework would not be done in his house; his house was for fun.

Likewise, the evidence presented regarding health and safety concerns, *Holley* factors (B) and (C), favored Patterson's retention as managing conservator with the right to determine C.A.B.'s residence, not her replacement by Brist. After Brist left his job, he went on welfare and medicaid, and C.A.B. was placed in the CHIP's program. At the time of the modification hearing, Patterson was maintaining health insurance on C.A.B., and Brist was not. Indeed, Brist was ordered to pay almost $2,000 in unreimbursed health insurance premiums at the beginning of the modification hearing or be put in jail. There was also unrebutted testimony from Patterson that Brist does not pay great attention to whether C.A.B. gets his medicine or not and that he did not have an inhaler available when C.A.B. got sick with asthma. Brist did not know the last time C.A.B. had his shots, did not know the last time he had been to a doctor, did not know the doctor's address, and misremembered the doctor's name. There was evidence that C.A.B. has asthma that is aggravated when he becomes sick and that may be aggravated by the eight acre pasture at

Brist's home, and Brist lives far from medical facilities.

With respect to safety, *Holley* factor (C), the majority observes that Patterson let C.A.B. ride a gas powered motor scooter without a helmet in the cul-de-sac, and, after he turned 11, she let him stay home alone in the summer or go to her father's house. These facts, however, are more than counter-balanced by testimony that Brist lets C.A.B. drive a pickup in the pasture, either alone or with his stepbrothers, and that he let C.A.B. play with firecrackers in a bottle, causing him to cut his arm, an injury for which Brist failed to seek medical attention. Brist's allowing C.A.B. to drive a pickup truck is at least some evidence that he allows C.A.B. to put himself and others in physical danger, as is Brist's allowing C.A.B. to play with firecrackers in a bottle.

Brist has demonstrated no ability to meet the emotional or physical needs of C.A.B. relative to *Holley* factor (B) other than love for his son—which is mutual, but no greater than that between Patterson and C.A.B. Instead, the record demonstrates that Brist relinquished a job in which he was able to provide financially for C.A.B. and had health insurance for C.A.B.—which he was legally obligated to provide—to go on welfare and now is self-employed and making an income substantially below the poverty level;[3] he has no insurance for C.A.B.; he defaulted in his court-ordered child financial support and health care obligations; at the time of modification, he has taken no interest in C.A.B.'s schooling and was unaware of who his teachers were or how he was doing in school, despite C.A.B.'s great success in school; and he did not know who C.A.B.'s doctor was and failed to provide treatment for C.A.B.'s asthma.

When the evidence relevant to *Holley* factors (B)(C), (D), (E) and (F) in favor of modification is weighed in light of the prior conservatorship order to determine whether modification would be a positive improvement for C.A.B., hence in his best interest, as required for modification of conservatorship, it is clear that *no* evidence relevant to these factors supports modification. Nor does consideration of the additional factors used to determine the best interest of a child in a modification and relocation case support the trial court's modification order or the panel majority's affirmance.

### *Holley factors (H) and (I)*

*Holley* factor (H) (acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one) and (I) (any excuse for the acts or omissions of the parent) both patently favor retaining Patterson as sole managing conservator over replacing her with Brist. When this suit was brought, Brist had left his job, paying $42,000 a year, had an income that year of only $5,800, had been or was on welfare, was behind in child support payments and in health insurance premium payments, and had breached his parental duties to support C.A.B. and to provide health insurance to him. These are positive acts and omissions in the record that reflect extremely negatively on Brist's understanding and performance of his parental responsibilities to his son (*Holley* factor (H)). Brist's inattention to C.A.B.'s schooling and his inability even to name C.A.B.'s teachers or his doctor are further indications that Brist lacks a proper parental relationship to his son.

Brist's acts and omissions of lack of support for C.A.B. and lack of a sustained interest in his welfare and development

---

**3.** Brist's wife's income lifts the family income   above the poverty level.

stand in stark contrast to the parenting abilities and understanding of parental responsibilities and willingness to bear them displayed by Patterson. Nor was any excuse provided by Brist or otherwise presented by the record for Brist's negative acts and omissions as a parent, as required by *Holley* factor (I) to support modification. Again, there is *no* evidence under these *Holley* factors that supports the inference that modification was in C.A.B.'s best interest.

### Holley Factor (G) and Modification Factors (J) and (K)

As stated above, "The public policy of this state is to … (2) provide a safe, *stable,* and nonviolent environment for the child." Tex. Fam.Code Ann. § 153.001(a)(2) (emphasis added). Accordingly, the rule in modification cases under both statutory and case law is that "[a]s a matter of public policy, there should be a high degree of stability in the home and surroundings of a young child, and, in the absence of materially changed conditions, the disturbing influence of re-litigation should be discouraged." *Knowles v. Grimes,* 437 S.W.2d 816, 817 (Tex.1969); *see also In re M.N.G.,* 113 S.W.3d at 33–34; *Bates,* 81 S.W.3d at 421. Thus, *Holley* factor (G) (the stability of the home or proposed placement) must be considered by the court in a modification case, as in any case involving conservatorship of a child, and before ordering a change from the previous conservatorship order the court should also consider the additional factors relative to modification, including (J) (the child's need for stability) and (K) (the need to prevent constant litigation). *See Long,* 144 S.W.3d at 68; *In re V.L.K.,* 24 S.W.3d at 343.

Nothing in the record of this case demonstrates that the trial court's judgment removing C.A.B. from Patterson's home to Brist's created a more stable environment for C.A.B., as required by *Holley* factor (G) and modification factor (J). To the contrary, the trial court's order changing managing conservatorship with the right to determine residency from Patterson to Brist upended the stability of the home in which C.A.B. had lived since infancy and removed him not only from his mother's home, in which was thriving by all objective criteria, but also from his town; from his school, where he participated in sports, was on the student council, and was a high honors student; and from his neighborhood friends. The evidence that the trial court's order *created* instability where there was none before is indisputable. Nor is there any evidence in the record that Patterson's home was unstable or that Brist's was more stable. Thus, nothing in the record relevant to *Holley* factor (G) and modification factor (J) (the child's need for stability) supports modification.

Moreover, this multi-year litigation, plus Brist's past history of failure to support C.A.B. and to provide health care for him, his conviction for criminal contempt, and his current precarious financial situation in attempting to care for 4 children on a reduced income all evince an unstable environment for C.A.B. in general and with respect to litigation and the expenses of litigation and augur future instability and future litigation. Not only was there *no* evidence at trial from which the trial court could reasonably have drawn the inference that modification would achieve greater stability for C.A.B. (modification factors (G) and (J)) or would prevent litigation (modification factor (K)), all the evidence was to the contrary.

### Relocation Factors (L), (M), (N), (O), and (P)

Finally, under the trial court's order modifying conservatorship, C.A.B.'s residence was changed from Harris County to east Chambers County, a change not only

of home, schools, friends, town, and county of residence, but also of trial and appellate jurisdiction over future conservatorship proceedings. Thus, since this case involves relocation, the trial court should have considered additional factors to determine whether relocation was in C.A.B.'s best interest, namely (L) (the degree to which the custodial parent's and the child's life might be enhanced economically, emotionally, and educationally by the move), (M) (a comparison of the quality of lifestyle), (N) (the negative impact of any continued hostility between the parents), (O) (the effect of the move on extended family relationships), and (P) (the child's age, community ties, health and education needs, and preferences).

The record demonstrates with respect to (L) that C.A.B.'s life was *not* improved economically, emotionally, or educationally by the move. He was removed from an economically and emotionally stable home in which he was the only child and had his own bedroom, study area and routine; in which he participated in sports teams and school activities, including student council, and had neighborhood friends; and in which he was enrolled in honors enrichment programs in an educationally superior school in which he was making straight A's. He was placed by the trial court in an economically unstable home in which the custodial parent, Brist, was making an income well below the poverty line, had been receiving welfare payments and government-sponsored medical assistance, had failed to pay child support payments or maintain health insurance for C.A.B., and had been held in criminal contempt by the court and ordered to serve 16 months in jail unless he paid back child support and health insurance premiums agreed upon in settlement of the claims of the former custodial parent, Patterson, and the Attorney General.

The home to which C.A.B. was removed is a trailer on property owned by his father's family in which he must share a bedroom with his two stepbrothers; and it is an isolated area of a rural county in which it is difficult for C.A.B. to participate in after-school sports or other activities and for him to receive medical treatment. The social, health-related, and educational opportunities are, therefore, much worse than in Patterson's home, although there is evidence that C.A.B. enjoys roping with his step-brothers. Thus, it cannot have been for *C.A.B.'s* economic, emotional, or educational benefit that this change of conservatorship was made. Indeed, the *only* person who benefits emotionally and economically is Brist—who by court order received a transfer of 20% of Patterson's net resources (making her much worse off) to supplement his own income and who, presumably, was likewise relieved of the burden of making past child support payments and of the threat of going to jail. This is a perversion of the standard of modification, not its fulfillment.

With respect to (M), the quality of C.A.B.'s lifestyle is patently worse in Brist's home, if quality of lifestyle is interpreted as stability of home, family, and friendships; economic well-being; access to social and educational opportunities; and access to health care. Similarly, with respect to (P), C.A.B.'s age, community ties, health and educational needs were all ignored by the trial court and will all be adversely affected by the court's order and the majority's affirmance. Only one of the subparts of (P)—C.A.B.'s preference—supports modification. Otherwise, there is *no* evidence that modification was a positive improvement for C.A.B., hence in his best interest. Instead, once again, all of the evidence with respect to the relevant conservatorship factors—here, (L), (M), and

(P)—shows that change of conservatorship was *contrary* to C.A.B.'s best interest.

There is no evidence in the record one way or the other with respect to the remaining relocation factors (N), hostility between the parents, and (O), the effect of the move on extended family relationships. Thus, factors (N) and (O) do not provide any evidence that change of primary conservatorship was in C.A.B.'s best interest.

The only reasonable inference from consideration of the relocation factors is that modification was *not* in C.A.B.'s best interest and that the trial court's order removing Patterson as sole managing conservator and naming Brist joint managing conservator with the exclusive right to determine C.A.B.'s residency was not supported by any guiding rules or principles, specifically, those rules and principles of law that govern modification of conservatorship of a child. *Cf. Holley*, 544 S.W.2d at 373 (Refusing to terminate parental rights and stating, "[a] review of the factors presented in the record reveals only evidence that indicates that termination is *not* in the best interest of the child. There is *no* evidence that termination is in the best interest of the child.") (emphasis added).

### Factual and Legal Sufficiency of the Evidence Supporting Modification

The *only Holley* factor, modification factor, or relocation factor for which the evidence supports modification is *Holley* factor (A), "the desires of the child." Specifically, the record contains C.A.B.'s written statement that he desired to live with his father, and there was some evidence in the record that he may have been unhappy with his mother because she refused to let him attend a championship baseball game in which he might have been able to substitute for a player, on the ground it would keep him up too late, and she objected to Brist's letting him drive a pickup

truck, which was "fun." This evidence, standing alone, is patently insufficient to support modification. Rather, the trial court's finding that modification was in the best interest of C.A.B. was clearly against the overwhelming weight of the evidence and manifestly wrong and unjust; and the trial court's inference that modification would be a positive improvement for C.A.B. and, therefore, in his best interest was clearly unreasonable.

Not only was the evidence factually insufficient to support a reasonable inference that modification was in C.A.B.'s best interest, it was legally insufficient to support such an inference. Under no Texas law, except the law now established in this jurisdiction by the majority in this case, has the designation of a 12–year–old child's preference for conservator with the exclusive right to determine primary residency been held sufficient to establish the child's best interest. *See In re Galliher*, 546 S.W.2d 665, 667 (Tex.Civ.App.-Beaumont 1977, no writ) (change of conservatorship is always subject to discharge of court's primary obligation of determining what is in best interest of child, and if, from consideration of record as whole, court should determine that change in conservatorship is in best interest of child, child's designation will be given effect; otherwise, it may be ignored). Rather, a child's preference for living with one parent rather than the other has consistently been considered in Texas jurisprudence to be only *one* factor, among many, relevant to the determination whether modification is in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72 (listing "the desires of the child" as one of nine factors in determining best interest); *Long*, 144 S.W.3d at 68 (listing desires of the child as one of 16 factors in determining best interest in case seeking modification of managing conservatorship in relocation context).

Indeed, in 2001, this very Court held that a 15–year–old child's expression of a reasoned preference for living with the other parent in a proceeding to modify conservatorship was only *one* of the relevant factors in determining whether a change from sole managing conservatorship to joint managing conservatorship was in the best interest of the child. *Turner*, 47 S.W.3d at 767. This Court stated, "We agree with Mother's contention that *a child's mere desire to live with the other, more lenient parent would be legally insufficient standing alone* to prove a retention of the sole managing conservator would be detrimental to the child's welfare." *Id.* at 766. The majority now contradicts this Court's precedent without explanation or citation to any authority for its ruling.

The majority opinion not only is wrong and manifestly unjust on the facts of the case, it disregards and misapplies the legal standard of review of modification of conservatorship, which requires that the evidence be legally and factually sufficient under guiding principles of law to support a reasonable inference that modification of a prior conservatorship order be a positive improvement for the child, hence in that child's best interest. The majority also ignores the binding precedent of this same Court, which recognizes that the child's preference of managing conservator, standing alone, is legally insufficient to justify modification of conservatorship. No reasonable inference could have been drawn from the evidence in the record of this case that modification would be a positive improvement for C.A.B. and, therefore, in his best interest. Thus, the trial court's order removing Patterson as sole managing conservator and appointing Brist as managing conservator with the right to establish C.A.B.'s primary residence was clearly arbitrary and capricious.

## REPLY TO CONCURRENCE

The concurrence is equally disturbing. The concurring justice opines that because the trial judge interviewed C.A.B. in chambers pursuant to section 153.009 of the Family Code and no record was made of that interview the appellate court must presume that the facts the trial court uncovered outweigh all of the facts in the record and support the trial court's judgment, which the appellate court is powerless to overturn. If this were a correct statement of Texas law, section 156.101 would be unconstitutional, because it would permit a state court judge to remove a fit mother as primary managing conservator of her child without evidence or notice of the allegations against her on the mere presumption that her child would prefer a change of conservatorship. *See Troxel*, 530 U.S. 57, 120 S.Ct. 2054, 2064, 147 L.Ed.2d 49 (2000) (applying Due Process Clause to State's to infringement on fundamental rights of parents to make child-rearing decisions). However, this is an incorrect statement of the law.

Section 153.009 of the Family Code permits a trial court to "interview in chambers a child 12 years of age or older ... to determine the child's wishes as to conservatorship or as to the person who shall have the exclusive right to determine the child's primary residence." TEX. FAM.CODE ANN. § 153.009(a) (Vernon Supp.2005). On motion of a party or of the court, a record must be made and shall be part of the record of the case if the child is 12 years of age or older. *Id.* § 153.009(f).

The concurrence misconstrues both section 156.101 and section 153.009 of the Family Code. The cases it relies on state that if no record is made, the appellate court must presume that facts existed which allowed the trial court to find that a change in primary residence was in the

child's best interest. *See Long,* 144 S.W.3d at 69; *Voros v. Turnage,* 856 S.W.2d 759, 763 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Neither these cases nor any other Texas cases, however, hold that a placement modifying conservatorship with the right to determine primary residency is sufficiently supported by a 12–year old child's affidavit regarding his wish to change conservatorship and a trial court's unrecorded interview with the child regarding the basis for his wishes. *Long,* in fact, makes it plain that the appellate court *must* review the *evidence in the record* to determine whether modification is in the best interest of the child and that the wishes of the child—whether supported by a presumption of fact from an unrecorded in-chambers interview or not— represent only *one* of the relevant factors. *See Long,* 144 S.W.3d at 68–70; *see also Voros,* 856 S.W.2d at 762 (evidence in record, together with presumed facts from unrecorded in-chambers interview, supported deviation from visitation guidelines).

Nothing in Texas law states or implies that the ordinary standard of review of legal and factual sufficiency of the evidence is disregarded when an appellate court determines whether a trial court abused its discretion in modifying conservatorship. To the contrary, the ordinary standard *does* apply; and that standard holds that, in considering the legal sufficiency of the evidence, we, as an appellate court, consider only the evidence that supports the trial court's findings, upholding the finder of fact's determination if supported by any probative evidence, and, in considering the factual sufficiency of the evidence, we "examine all the evidence and reverse only if the trial court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust." *Long,* 144 S.W.3d at 67. Here, there is simply no evidence in the record

that removing Patterson as sole managing conservator and appointing Brist was a positive improvement for C.A.B. and, therefore, in his best interest, aside from the expression of C.A.B.'s wishes as to conservatorship, filed with the trial court, and the presumption that facts expressed in the in-chambers interview supported the trial court's determination that C.A.B. wished to live with his father and thus that modification was in C.A.B.'s best interest. The evidence and the presumption together still do not constitute more than a scintilla of evidence that modification was in C.A.B.'s best interest or that the trial court acted with reference to any guiding principles in modifying the conservatorship order.

## CONCLUSION

I can find nothing in the record and nothing in controlling law that supports the majority's decision to affirm the trial court's decision to divest Patterson of sole managing conservatorship, name Brist joint managing conservator with the right to choose C.A.B.'s residence, and order Patterson to pay child support to Brist, other than the statement of preference of a 12–year–old child and the trial court's arbitrary and capricious determination—in defiance of the legal guidelines for determining the child's best interest and the absence of evidence supporting modification—that it was in the "best interest" of that 12–year–old child to wrest him from the stable and loving home in which he had lived since infancy, and in which he was thriving, and to move him to a less stable household with much less emotional and physical support for him and a worse quality of life under all applicable criteria, in a different county, away from his home, town, school, and friends. Rather, the only reasonable inference from the evidence is that the change was not a positive

improvement, but a detriment to the stability of C.A.B.'s home and surroundings, as well as to his physical, mental, emotional, and economic welfare, hence to his best interest.

Neither the trial court nor this Court seems to realize either the incredible leverage their rulings give an irresponsible 12–year–old over his parents with respect to his upbringing or, conversely, the intolerable burden they place on a responsible 12–year–old who is told he must tell the trial court he wants to live with his non-custodial parent because if he does not that parent will have to pay a lot of money to the other parent, or, if he or she cannot pay, go to jail, devastating his or her current family. Accordingly, I can interpret the decisions of the trial court and the panel majority on this Court only as an abdication of judicial responsibility to protect the best interest of a child caught between divorced parents. To my mind, this is an exercise in judicial folly that can serve only as encouragement to other parents sued by the Attorney General for child support to move to change conservatorship to the "fun" household based solely on the child's stated preference and to seek to offset past-due support payments, avoid the risk of jail for non-payment, and supplement the family income with support payments from the fit parent who is deprived of sole managing conservatorship—all at the expense of the best interest of the child under any objective standard.

In its wrongful disregard of the primacy of stability and the best interest of the child as considerations in family conservatorship and possession matters, the plain language of the modification of conservatorship statute, the established standard of review of modification orders, and the binding precedent of this Court, and in its establishment of the preference of a 12–year–old child and the whim of a family court judge as sufficient criteria for modification of conservatorship, the majority opinion works injustice not only in this case but in every future case in which conservatorship of a child comes within its jurisdiction.

I would hold that the trial court clearly erred in modifying the conservatorship order. I would reverse the judgment of the trial court and render judgment that the prior conservatorship order and prior child support order be reinstated and that the criminal contempt order entered against Brist in accordance with the parties' settlement agreement likewise be reinstated.

TERRY JENNINGS, Justice, dissenting from the denial of en banc consideration.

In its opinion, the panel majority effectively applies the wrong standard of review in this case, resulting not only in its error, but also a deviation from the prior precedent of this Court and well-established Texas law. Accordingly, I respectfully dissent from the denial of en banc consideration of this case. *See* TEX.R.APP. P. 42.1(c).

In her sole issue, appellant, Patterson, argues that the trial court abused its discretion in removing her as sole managing conservator and naming appellee, Brist, as joint managing conservator with the right to designate their child's residence because "there is no evidence or insufficient evidence to support the trial court's finding that it is in [their child's] best interest for … Brist to be named as joint managing conservator with the right to designate [their child's] residence."

The panel majority correctly notes that we review a trial court's decision on custody, control, possession, and visitation matters for abuse of discretion, and reverse the trial court's order only if we deter-

mine, from reviewing the record as a whole, that the trial court abused its discretion. *Turner v. Turner*, 47 S.W.3d 761, 763 (Tex.App.-Houston [1st Dist.] 2001, no pet.). It then states that "[a]n allegation of legal or factual insufficiency is not treated as an independent ground of error in this context because the appropriate standard of review is abuse of discretion." *See Hardin v. Hardin*, 161 S.W.3d 14, 19 (Tex. App.-Houston [14th Dist.] 2004, no pet.). The panel majority recognizes that such "[s]ufficiency challenges are incorporated into an abuse of discretion determination." *See McGuire v. McGuire*, 4 S.W.3d 382, 387 n. 2 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

However, after recognizing that such sufficiency challenges are necessarily to be incorporated into its abuse of discretion determination, the majority then proceeds to review the case only for an abuse of discretion after viewing the evidence in the light most favorable to the trial court's decision without conducting a factual sufficiency review.

As noted by Patterson, in her briefing, this Court has previously explained that although "sufficiency challenges are not independent points of error," they "are *incorporated* into an abuse of discretion determination." *Id.* (emphasis added). In *McGuire*, a child support case, we explained,

> Once the reviewing court determines whether sufficient evidence exists, it must then decide whether the trial court appropriately exercised its discretion in applying the child support guidelines.

*Id.* (emphasis added). Thus, we "address[ed] both the sufficiency and abuse of discretion prongs of the inquiry." *Id.* In the instant case, the majority skips the first part of the analysis, jumps immediately to the second, and concludes that the trial court did not abuse its discretion.

The standard utilized in *McGuire* is well-established and has been applied in the context of reviewing a trial court's modification of a joint managing conservatorship. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex.App.-Fort Worth 2002, pet. denied). In *T.D.C.*, also cited by appellant, the court held that the evidence was factually insufficient to support the trial court's finding of "positive improvement." *Id.* at 873-74. The court discussed "positive improvement" in the context of whether the modification was in the child's best interest considering the *Holley* factors. *Id.* at 873-76; *see Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex.1976). The court further held,

> Because positive improvement is the most important consideration of the trial court in determining the issue of whether the prior conservatorship order should be modified by appointing a new primary managing conservator, we conclude that the trial court abused its discretion in appointing Stoney as the primary managing conservator based on a positive improvement finding that is contrary to the overwhelming weight of the evidence.

*Id.* at 876. Chief Justice John Cayce, writing for the majority, articulated the standard as follows:

> In our review of modification under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in deciding whether the trial court abused its discretion. *D.R. v. J.A.R.*, 894 S.W.2d 91, 95 (Tex.App.-Fort Worth 1995, writ denied); *see In re D.S.*, 76 S.W.3d 512, 516 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Norris v. Norris*, 56 S.W.3d 333, 338 (Tex.App.-El Paso 2001, no pet.). In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the

trial court's decision, we engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *D.S.*, 76 S.W.3d at 516; *Norris*, 56 S.W.3d at 338; *see Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.). The traditional sufficiency review comes into play with regard to the first question. *Lindsey*, 965 S.W.2d at 592. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

*Id.* at 872. Chief Justice Cayce then set out the appropriate legal and factual sufficiency standards of review and applied

them by conducting the appropriate reviews of the evidence. *Id.*

In this case, this Court should do likewise. The panel majority's failure to do so leads to its error in affirming the trial court's order and constitutes a deviation from our prior precedent and well-established law. *See* TEX.R.APP. P. 42.1(c).[1]

---

1. Also, the concurring justice errs in concluding that this court must presume facts supporting the modification because the trial court's "finding, that a change in [the child's] primary residence was in his best interest, was based, in part, on its interview of [the child] in chambers" and "Patterson did not object to the absence of a transcript of this interview on appeal." *See Long v. Long*, 144 S.W.3d 64, 69 (Tex.App.-El Paso 2004, no pet.); *Voros v. Turnage*, 856 S.W.2d 759, 763 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

> The Texas Family Code provides that in a non-jury trial or at a hearing, the trial court, upon the application of a party, an amicus attorney, or an attorney ad litem for the child, shall interview in chambers a child 12 years of age or older "to determine the child's wishes as to conservatorship or as to the person who shall have the exclusive right to determine the child's primary residence." TEX. FAM.CODE ANN. § 153.009(a) (Vernon Supp.2005).
> Although section 153.009(a) specifically allows for an in-chambers interview "to determine the child's wishes," it says nothing about interviewing a child in regard to determining whether a modification is in a child's best interest considering the other appropriate *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex.1976). Although a presumption from the omitted

record that the child here desired that his father be named as joint managing conservator with the right to designate his residence is appropriate, no other presumption in regard to the other pertinent *Holley* factors can be made.

Moreover, a presumption that the child here desired that his father be named as joint managing conservator with the right to designate his residence does not in any way relieve this Court of its responsibility to apply the appropriate standard of review, by actually addressing the legal and factual sufficiency of the evidence in support of the trial court's decision, as demonstrated in *McGuire* and *In re T.D.C. See McGuire v. McGuire*, 4 S.W.3d 382 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *In re T.D.C.*, 91 S.W.3d 865 (Tex.App.-Fort Worth 2002, pet. denied).

In fact, in *Long*, cited in the concurring opinion, the court found legally and factually sufficient evidence to support the trial court's order modifying the parent-child relationship after a detailed discussion of the appropriate *Holley* factors. 144 S.W.3d at 69-71. Also, in *Voros*, cited in the concurring opinion, we held that the trial court did not abuse its discretion in denying the appellant standard visitation rights after reviewing the trial court's fact findings in regard to the pertinent factors. 856 S.W.2d at 760-63.